## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STILTON INTERNATIONAL HOLDINGS LIMITED, | ) ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-361-JJF |
| | ) | |
| CIS FINANCIAL SERVICES, INC. and CARGILL, INCORPORATED, | ) ) | **PUBLIC VERSION** |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
## CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT

OF COUNSEL:

Bruce G. Paulsen
Jeffrey M. Dine
Paula Odysseos
SEWARD & KISSEL LLP
1 Battery Park Plaza
New York, New York
Tel: (212) 574-1200

Kevin R. Shannon (#3137)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
kshannon@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Petitioner Stilton International Holdings Limited*

Dated: June 16, 2008
Public Version Dated: July 7, 2008
872973/33162

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT .......................................................................................................... 6

    I.     The Court Has Jurisdiction ........................................................................ 6

    II.    The Court Must Confirm The Final Award ................................................ 8

CONCLUSION........................................................................................................ 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Bio Medica Corp. v. Peninsula Drug Analysis Co.,*
    C.A. No. 99-218-SLR, 1999 U.S. Dist. LEXIS 12455 (D. Del. Aug. 3, 1999)........................7

*Environmental Systems of Delaware v. Leslie,*
    Civ. A. No. 94-2250, 1994 U.S. Dist. LEXIS 16719 (E.D. Pa. Nov. 23, 1994) ......................7

## STATE CASES

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,*
    C.A. No. 19760-NC, 2004 Del. Ch. LEXIS 21 (Del. Ch. Mar. 4, 2004) ..................................7

## FEDERAL STATUTES AND TREATIES

9 U.S.C. § 13 ...............................................................................................................................9

9 U.S.C.A. § 202 (1999)..............................................................................................................6

9 U.S.C.A. § 203 (1999)..............................................................................................................6

9 U.S.C.A. § 204 (1999)..............................................................................................................6

9 U.S.C.A. § 207............................................................................................................................1, 8

28 U.S.C. § 1332(a)(2) ................................................................................................................7

28 U.S.C. § 1391(a)(1) ................................................................................................................7

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10,
    1958, Article IV ....................................................................................................................9

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10,
    1958, Article V .....................................................................................................................8

## STATE STATUTES

8 Del. Code Ann. § 278 (West 2001) ..........................................................................................7

New York Civil Practice Law and Rules, § 5004.........................................................................5

New York Civil Practice Law and Rules, § 7503(c) ....................................................................8

Petitioner Stilton International Holdings Limited ("Petitioner" or "Stilton"), by and through its undersigned attorneys, submits this opening brief in support of its motion for an order pursuant to Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207: (a) confirming an arbitration award duly executed in counterparts on May 20 and May 21, 2008 (the "Final Award"), in favor of Petitioner made by a panel of three arbitrators (the "Tribunal") in an arbitration administered by the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA"), sitting in New York, New York, pursuant to the Commercial Arbitration Rules of the AAA (the "AAA Commercial Rules"), after a full hearing, and (b) directing the Clerk to enter judgment thereon against Respondents CIS Financial Services, Inc. ("CISFS") and Cargill, Incorporated ("Cargill").

## NATURE AND STAGE OF THE PROCEEDINGS

On May 20 and May 21, 2008, the Tribunal duly executed the Final Award (Annexed as Exhibit 1 to the Affidavit of Bruce G. Paulsen, dated June 13, 2008 ("Paulsen Aff.")) in counterparts, awarding Stilton $30.6 million, plus interest at the New York statutory rate of 9% from the date of the Final Award, subject to Stilton's giving Respondents a credit for any amounts it ultimately receives on its $54 million proof of claim in the bankruptcy of Refco Capital Markets, Limited ("RCM") in excess of 43.3% of the amount of such claim. *See* Paulsen Aff., Ex. 1 at 3. Stilton has filed, contemporaneously with this Motion to Confirm Arbitration Award and for Entry of Judgment and this opening brief, its Petition to confirm the Final Award (the "Petition" or "Pet.") and the Paulsen Affidavit.

## SUMMARY OF ARGUMENT

The Final Award falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention") pursuant to Section 202 of the FAA. The Court has jurisdiction and venue of this proceeding under Sections 203 and 204 of

the FAA. As none of "the grounds for refusal or deferral of recognition or enforcement" under the Convention being applicable to the Final Award, section 207 of the FAA provides that the Court shall confirm the Final Award.

### STATEMENT OF FACTS

Stilton was in the business of over-the-counter ("OTC") foreign exchange ("FX") trading. Pet. ¶ 7; Final Award at 1. Respondent CISFS was engaged in the business of brokering OTC FX trades. Final Award at 1. On or about October 17, 1997, Stilton entered into a Foreign Exchange Account Agreement (the "Agreement") with CISFS. Pet. ¶ 8; Paulsen Aff., Ex. 2. The parties' agreement to arbitrate is contained in paragraph 17 of the Agreement. Paulsen Aff., Ex. 2 at 5. Paragraph 20 provides that the Agreement is governed by New York Law. *Id.* at 6. An addendum to the Agreement, dated December 15, 1999, and an Amendment of the same, dated March 9, 2000, are attached to the Paulsen Affidavit as Exhibits 3 and 4 respectively.

After the Agreement was entered into, Stilton conducted substantial trading in its account at CISFS. Pet. ¶ 9. On or about June 21, 2005, Cargill entered into a purchase and sale agreement to sell its commodities brokerage businesses, including CISFS, to Refco Group Ltd., LLC and its subsidiaries ("Refco"). Pet. ¶ 10; Final Award at 1. As part of the sale, Cargill agreed to "cause" the transfer of the assets of CISFS (for which Cargill received substantial payment), including the Agreement with Stilton, to Refco. Pet. ¶ 10; *see also* Final Award at 3. Cargill did not sell the stock of CISFS to Refco, and CISFS remained its subsidiary. Pet. ¶ 10. On August 31, 2005, CISFS assigned Stilton's account to RCM. Pet. ¶ 11; *see also* Final Award at 1. RCM, as CISFS' assignee, acted as Stilton's broker after that date. Pet. ¶ 11; Final Award at 1. The Agreement was not the subject of a novation or any other agreement that would have

2

released CISFS from its duties and obligations under the Agreement. Pet. ¶ 11; Final Award
at 3.

On or about October 10, 2005, Refco made a public announcement of accounting
irregularities involving Phillip Bennett, its CEO. Pet. ¶ 12; Final Award at 1-2. Refco's
business spiraled downward quickly thereafter, and on October 13, 2005, RCM declared a
moratorium on trading in all accounts, including Stilton's. Pet. ¶ 14; Final Award at 2. On
October 17, 2005, RCM filed for bankruptcy protection and thereafter forcibly liquidated
Stilton's account. Pet. ¶ 15; Final Award at 2. On October 12, 2005, Stilton withdrew $20
million from its account at RCM. Pet. ¶ 13. Its request to transfer certain other funds out of the
account to an account at a related Refco entity was not honored. Pet. ¶¶ 13, 15. Instead, it was
left with a claim against RCM's bankruptcy estate. Pet. ¶ 15; Final Award at 2. Stilton
subsequently filed a proof of claim in the amount of $54 million in the RCM bankruptcy.
Pet. ¶ 16; Final Award at 2. RCM did not object to Stilton's proof of claim and it has been
allowed.[1] Petition ¶ 16.

On or about May 19, 2006, Cargill caused the dissolution of CISFS. Final Award
at 3; Pet. ¶ 18.

On or about June 20, 2007, Stilton commenced an arbitration proceeding, filing a
Statement of Claim with the AAA under the AAA Commercial Rules (which were applicable
under the Agreement) against Respondents, alleging breach of contract and tort causes of action
and seeking damages, costs and disbursements. Pet. ¶ 19. Stilton claimed that Cargill was liable

---

[1]  RCM subsequently filed a preference action in the amount of $20 million against Stilton in the
Bankruptcy Court for the Southern District of New York. That action is still pending. Although
Stilton sought recovery in the arbitration with respect to the preference action, the Tribunal
denied that relief.

to it directly and also responsible for CISFS' breaches under alter ego and agency theories. *Id.*
Stilton also served a Demand for Arbitration in accordance with New York law upon CISFS and
Cargill. *Id.* Both CISFS and Cargill responded to the Statement of Claim and participated in the
arbitration, and did not at any time assert that they contested jurisdiction or were otherwise not
bound to arbitrate the dispute. *Id.*

On August 2, 2007, the AAA selected the arbitrators based on the parties' "strike
and rank" selections. Pet. ¶ 20; *see also* Paulsen Aff., Ex. 5. There was no selection or
appointment of an additional arbitrator or umpire. Pet. ¶ 20. The matter was heard by the
Tribunal on March 17 and 18, 2008 pursuant to the AAA Commercial Rules, in New York, New
York. Pet. ¶ 21. All parties participated in the hearing and presented evidence. *Id.*

The parties submitted substantial written prehearing and posthearing briefs, and a
large number of exhibits were admitted in evidence at the hearing, without objection from any
party. Pet. ¶ 22. The posthearing briefs were submitted on May 2, 2008, Petitioner submitted a
short letter brief to the Tribunal on May 5, and the hearing was closed, without objection, on
May 6, 2008. *Id.*

The Tribunal issued the Final Award, duly executed in counterparts on May 20
and 21, 2008. Paulsen Aff., Ex. 1; Pet. ¶ 23. There were no extensions of the time within which
to make the award. Pet. ¶ 23.

In the Final Award (at 3), the Tribunal found that:

> New York law governing the Agreement is clear that, absent a
> novation or specific release, the transferor/assignor of such a
> contract remains jointly and severally liable for the breaches of that
> contract by the transferee/assignee. Under the circumstances
> presented here, no novation or release of Respondents' obligations
> to Claimant [Stilton] was ever offered or even considered; and
> neither Claimant's failure to object to the transfer/assignment, nor
> the handwritten notation on Respondents' August 15, 2005, letter

4

to Claimant, can relieve Respondents of their joint liability with Refco for Refco's breaches of the Agreement under New York law.

The Tribunal determined (Final Award at 3) that RCM committed multiple breaches of the Agreement, for which Respondents remained responsible:

> Claimant's damages were a direct consequence of Refco's breaches of the Agreement; that is, among other things, Refco's October 13, 2005 moratorium on trading and withdrawals; liquidation of the account; and failure and refusal to return the monies in that account to Claimant. Refco's bankruptcy limited Claimant's ability to recover its damages from Refco occasioned by the breaches of the Agreement; the bankruptcy and bankruptcy law neither excused those breaches nor Respondents' joint liability therefore.

The Tribunal then found (Final Award at 3) that it was:

> [R]easonable to expect that Stilton will receive 43.33% of its $54 million in damages 'from' Refco in the bankruptcy proceedings, leaving approximately $30.6 million due and owing from Respondents. (In this regard, we note that Cargill "caused" the transfer of the Agreement and, while both Respondents are responsible here, Cargill "caused" the dissolution of CISFS in 2006....)

The Tribunal thus awarded Stilton $30.6 million, plus interest at the legal rate (that is, 9% under Section 5004 New York's Civil Practice Law and Rules) from the date of the Final Award. Final Award at 4. The Final Award provides that Respondents "shall be given credit for any monies paid to Claimant on account of its $54 million claim in the bankruptcy court in excess of $23.4 million. *Id.* That is, Stilton is enjoined to pay to Respondents any monies it receives in the future on account of its proof of claim in excess of 43.33% of the claim. *See id.* The Tribunal further ordered the parties to bear the administrative expenses of the ICDR as incurred and to evenly split the compensation and expenses of the Arbitrators, and set forth the amounts of such expenses and compensation. Final Award at 4. The Final Award "is in full and complete settlement of any and all claims, counterclaims, defenses and off-sets properly

5

submitted to the jurisdiction of the Arbitrators in this proceeding, and any claim or counterclaim not specifically granted herein is nonetheless deemed denied." *Id.*

## ARGUMENT

### I.    The Court Has Jurisdiction

The Court has jurisdiction under Chapter 2 of the Federal Arbitration Act. Section 202 of the FAA provides that an arbitral award considered as commercial that is not entirely between citizens of the United States is deemed to fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (entered into force by the United States on December 29, 1970). 9 U.S.C.A. § 202 (1999). Stilton is a British Virgin Islands international business corporation with its principal place of business in the Bahamas. Pet. ¶ 1. Respondents are Delaware corporations (one of them dissolved) with their principal places of business in Minnesota. Pet. ¶¶ 2, 3. The arbitration is thus not entirely between citizens of the United States.

Under Section 203 of the FAA, an action or proceeding (such as this one) that falls under the Convention is "deemed to arise under the laws and treaties of the United States." 9 U.S.C.A. § 203 (1999). "The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *Id.* This Court thus has jurisdiction over the subject matter.

Under Section 204 of the FAA, the venue provision, an action to confirm an arbitration "may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought." 9 U.S.C.A. § 204 (1999). Such an action could have been brought in this District. Respondents,

6

as Delaware corporations, would be – and in fact are – amenable to personal jurisdiction in this District.[2] *See, e.g., American Bio Medica Corp. v. Peninsula Drug Analysis Co.*, C.A. No. 99-218-SLR, 1999 U.S. Dist. LEXIS 12455, at * 6 (D. Del. Aug. 3, 1999) ("There is no question but that this court can exercise personal jurisdiction over defendant Dipro, a Delaware corporation."); *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, C.A. No. 19760-NC, 2004 Del. Ch. LEXIS 21, at * 11 (Del. Ch. Mar. 4, 2004) ("Defendant BLS Inc. is a Delaware corporation and therefore subject to this Court's jurisdiction."); *Environmental Systems of Delaware v. Leslie*, Civ. A. No. 94-2250, 1994 U.S. Dist. LEXIS 16719, at * 5 (E.D. Pa. Nov. 23, 1994) (dissolved Delaware corporation remained Delaware citizen for three years after dissolution). There is no question that the Respondents are subject to suit in this District and this District is therefore an appropriate venue under Section 204.

As such, pursuant to paragraph 17 of the Agreement, "Judgment upon any award entered by the arbitrators may be entered in any court of competent jurisdiction." Paulsen Aff., Ex. 2 at 5. For the reasons set forth above, this Court is a requisite "court of competent jurisdiction."

In the alternative, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that the action is between citizens of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds the sum or value of $75,000. Venue is alternatively proper in this court pursuant to 28 U.S.C. 1391(a)(1).

---

[2]  Although CISFS was dissolved on or about May 19, 2006, under Delaware law it continues as a body corporate for at least three years for the purpose, *inter alia*, of defending suits. 8 Del. Code Ann. § 278 (West 2001).

## II.    The Court Must Confirm The Final Award

The Court must confirm the Final Award, as the grounds for declining to confirm an award under the Convention are very narrow, and none apply here.  Section 207 of the FAA provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (1999) (emphasis added).  The grounds specified in Article V of the Convention are: (a) incapacity of the party or invalidity of the agreement, (b) lack of notice to a party against whom an award was made; (c) that the award deals with a difference outside the scope of the submission to arbitration; (d) the composition of the arbitral authority or arbitral procedure was not in accordance with the agreement of the parties or the law of the country where the arbitration took place; (e) the award has not yet become binding on the parties or has been set aside or suspended, (f) the subject matter of the arbitration is not capable of settlement by arbitration under the law of the country or (g) recognition or enforcement of the award would be contrary to public policy of the country where enforcement is sought.  Convention art. V §§ 1-2.  None of these grounds apply: no party has questioned the validity of the agreement, both Respondents received notice of the arbitration under both the provisions of the AAA Commercial Rules and New York Civil Practice Law and Rules § 7503(c), and both Respondents participated in the arbitration without protest.  There is no question that the arbitrators were duly appointed under the AAA Commercial Rules, and no party objected to their selection or to the arbitral procedure.  The Final Award is binding upon the parties.  And the

8

subject of the dispute – a matter of contract interpretation and application – is both well within the scope of arbitration permitted in the United States and wholly within its public policy.

Article IV of the Convention requires that Stilton, as the party "applying for recognition and enforcement" of the award supply the original or certified copies of the award and the agreement to arbitrate. Those documents are filed as Exhibits 1 and 2 to the Paulsen Affidavit. Because the Agreement provides for entry of judgment on the award (Paulsen Aff. Ex. 2 ¶ 17, at 5) the Clerk shall docket judgment on the order of confirmation "as if it was rendered in an action." 9 U.S.C. § 13 (stating that such judgment shall be docketed upon a motion to confirm an arbitration award, and upon presentation and filing of the required papers to the clerk).

### CONCLUSION

For the foregoing reasons, the Court should confirm the Final Award and direct entry of judgment on the Final Award, and grant such other, further and different relief as it deems just and proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Bruce G. Paulsen
Jeffrey M. Dine
Paula Odysseos
SEWARD & KISSEL LLP
1 Battery Park Plaza
New York, New York
Tel: (212) 574-1200

By:   _/s/ David E. Moore_
      Kevin R. Shannon (#3137)
      David E. Moore (#3983)
      1313 N. Market Street
      Hercules Plaza, 6th Floor
      P. O. Box 951
      Wilmington, DE 19899
      Tel: (302) 984-6000
      kshannon@potteranderson.com
      dmoore@potteranderson.com

Dated: June 16, 2008
Public Version Dated: July 7, 2008
872973/33162

*Attorneys for Petitioner Stilton International Holdings Limited*

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 7, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on July 7, 2008, I have Electronically Mailed the document to the following person(s):

Daniel B. Rath
Rebecca L. Butcher
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
Wilmington, DE 19801
rath@lrclaw.com
butcher@lrclaw.com

Michael B. Fisco
Will Stute
Michael M. Krauss
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
MFisco@faegre.com
WStute@faegre.com
mkrauss@faegre.com

/s/ David E. Moore
Kevin R. Shannon (#3137)
David E. Moore (#3983)
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
kshannon@potteranderson.com
dmoore@potteranderson.com

872980/33162

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STILTON INTERNATIONAL HOLDINGS LIMITED, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | C.A. No. 08-361-JJF |
| CIS FINANCIAL SERVICES, INC. and CARGILL, INCORPORATED, | ) ) ) | **PUBLIC VERSION** |
| Respondents. | ) ) | |

## AFFIDAVIT OF BRUCE G. PAULSEN
## IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD

OF COUNSEL:

Bruce G. Paulsen
Jeffrey M. Dine
Paula Odysseos
SEWARD & KISSEL LLP
1 Battery Park Plaza
New York, New York
Tel: (212) 574-1200

Kevin R. Shannon (#3137)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
kshannon@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Petitioner Stilton International
Holdings Limited*

Dated: June 16, 2008
Public Version Dated: July 7, 2008
33162

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STILTON INTERNATIONAL HOLDINGS LIMITED, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| CIS FINANCIAL SERVICES, INC. and CARGILL, INCORPORATED, | ) ) ) | |
| Respondents. | ) ) | |

**AFFIDAVIT OF BRUCE G. PAULSEN
IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD**

STATE OF NEW YORK     )
                                        ) ss.:
COUNTY OF NEW YORK )

      BRUCE G. PAULSEN, being duly sworn, deposes and says:

      I am a member of the law firm of Seward & Kissel LLP, counsel for Petitioner

Stilton International Holdings Limited ("Stilton") in the above-referenced matter.  I have

personal knowledge of all the facts contained herein and, if called to testify, could and would

competently testify thereto.

      1.    Attached hereto as Exhibit 1 is a duly certified copy of the Final Award, duly

executed in counterparts on May 20 and 21, 2008, of a panel of arbitrators in an arbitration

administered by the International Centre for Dispute Resolution ("ICDR") of the American

Arbitration Association ("AAA") arbitration number 50 148 T 00217 07 between Petitioner and

Respondents CIS Financial Services, Inc. and Cargill, Incorporated (the "Arbitration").  The

original certification of Thomas Ventrone, sworn to June 3, 2008, and a copy of the Commercial

Arbitration Rules of the AAA (the "AAA Commercial Rules"), as amended and effective

September 15, 2005, are included in Exhibit 1.  The Arbitration was conducted pursuant to the

AAA Commercial Rules.

      2.     Attached hereto as Exhibit 2 is a duly certified copy of the Foreign Exchange

Account Agreement between CIS Financial Services, Inc. and Stilton, dated October 17, 1997

(the "Agreement").  The original certification of Craig Mawdsley is included in Exhibit 2.  The

agreement to arbitrate is at paragraph 17 of the Agreement.  Certain bank account information

has been redacted from the filed copy of the Foreign Exchange Account Agreement.

      3.     Attached hereto as Exhibit 3 is a true and correct copy of an Amendment to the

Agreement dated December 15, 1999

      4.     Attached hereto as Exhibit 4 is a true and correct copy of an Addendum to the

Agreement dated March 4, 2000.

      5.     Attached hereto as Exhibit 5 are true and correct copies of the appointment

documents for the arbitrators as supplied to the parties by the ICDR.

 

 

                          Bruce G. Paulsen

 

Sworn to before me this 13ᵗʰ day of
June, 2008

 

Notary Public

SK-25387 0004 892145

JE JUN MOON
Notary Public, State of New York
No. 02MO6033737
Qualified in New York County
Commission Expires Nov. 22, 20~~

APR. 24, 2010

                         2

# Exhibit 1



**International Centre for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

# CERTIFICATION

In the Matter of the Arbitration Between:

Re: 50 148 T 00217 07
    Stilton International Holdings Limited
    vs.
    CIS Financial Services, Inc.
    and
    Cargill, Incorporated

State of New York

County of New York   } SS:

Thomas Ventrone, being duly sworn deposes and says:

1.      I am the Vice-President of the International Centre for Dispute Resolution of the American Arbitration Association (hereinafter referred to as the Association), a not-for-profit, educational, Association organized under the Laws of the State of New York, having its principal offices at 1633 Broadway, New York, NY 10019.

2.      In such capacity, I am in general charge of all international arbitrations conducted pursuant to the Commercial Arbitration Rules of the Association in its International Centre for Dispute Resolution. A copy of such Rules is attached hereto.

3.      I have reviewed the Association's file pertaining to the above-captioned arbitration previously administered by the Association as case # 50 148 T 00217 07.

4.      I hereby certify that the following document, as listed and attached, is a true and exact copy of the same document contained in said file # 50 148 T 00217 07:

    (i.)    "Final Award," duly executed in counterparts on May 20 and 21, 2008.

5.      I hereby certify that the subject arbitration was governed by the Commercial Arbitration Rules of the Association, as amended and in effect September 15, 2005.

DATED: June 3, 2008

                                             _Thomas Ventrone_
                                                Thomas Ventrone

State of New York                    }
                                     }   SS:
County of New York                   }

On this **3**ʳᵈ day of June, 2008 before me personally came and appeared Thomas Ventrone, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledged to me that executed the same.

__6- 3 - 0 8__                       _Quincy B. Smith_
     Dated                                Notary Public

> QUINCY B SMITH
> Notary Public - State of New York
> NO. 01SM6175381
> Qualified in Kings County
> My Commission Expires 12-09-2011

## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

Commercial Arbitral Tribunal

In the Matter of the Arbitration Between:

**Case No. 50 148 T 00217 07**

**Stilton International Holdings Limited**

**Vs.**

**CIS Financial Services, Inc. and**

**Cargill, Incorporated**

### FINAL AWARD

WE, the UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration provisions of the parties' Foreign Exchange Account Agreement dated October 17, 1997, as amended, and the Commercial Rules of the American Arbitration Association; and having been duly sworn; and having heard and duly considered the proofs and allegations of Stilton International Holdings Limited (hereinafter "Claimant") and of CIS Financial Services, Inc. ("CISFS") and Cargill, Incorporated (hereinafter "Respondents"); do hereby DECIDE and AWARD as follows:

**Operative Facts**

In October 1997, Claimant executed the Foreign Exchange Account Agreement; funded its account with CISFS (an indirect subsidiary of Cargill); and, for the next 7 or so years, CISFS acted as Claimant's broker in unregulated, over-the-counter foreign exchange transactions. In June 2005, Cargill agreed to sell its brokerage operations, including the "assets" of CISFS (*i.e.,* the accounts of its customers, among other things), to Refco Group Ltd. ("Refco"); and, when the transaction closed on August 31, 2005, Claimant's account with CISFS was transferred to Refco Capital Markets Ltd. ("RCM"). During September and early October 2005, Refco was Claimant's "broker" and serviced Claimant's foreign exchange account (in large measure using a number of the same CISFS employees and systems who moved to Refco as a part of the transaction).

On or about October 10, 2005, Refco publicly announced that it had discovered serious accounting irregularities and other misconduct involving its then CEO, Phillip Bennett (who had

TRUE COPY
INTERNATIONAL CENTRE FOR
DISPUTE RESOLUTION

negotiated and approved the June transaction with Cargill). On October 13, 2005, Refco declared a moratorium on trading with respect to all of its accounts, including Claimant's; and on October 17, 2005, Refco and its affiliates, including RCM, filed for bankruptcy protection. As a consequence, Claimant's account was liquidated and made subject to distribution to all of Refco's customers and creditors pursuant to bankruptcy law.

**Claims and Defenses**

By these proceedings, Claimant seeks to recover from Respondents the sum of approximately $36.3 million, calculated as the difference between its accepted proof of claim in the Refco bankruptcy ($54 million) and the monies Claimant has received or expects to receive in distributions from the bankruptcy proceedings (plus interest, costs and attorneys' fees). In this regard, Claimant posits two basic theories of liability: First, Claimant essentially argues that, since the Agreement was merely transferred or assigned by Respondents to Refco and not novated, Respondents remain jointly liable with Refco for Refco's breaches of that Agreement. Second, Claimant seeks to hold Respondents liable for Stilton's losses by virtue of their alleged bad faith and/or tortious misrepresentations in connection with Respondents' transactions with Refco.

With respect to Stilton's contract claim, Respondents deny any liability since Claimant "consented" to the assignment of the Agreement and transfer of its account to Refco. With respect to the tort claims, Respondents, among other things, deny that there was any bad faith on their part; that they made any material misrepresentations; or, for that matter, that they owed any duty to Claimant in connection with the transactions between Refco and Respondents. More importantly, Respondents argue, any losses suffered by Claimant were caused by Bennett's misconduct and Refco's bankruptcy; consequently, recovery of those losses must be determined in bankruptcy court, not here. In addition to dismissal of all claims, Respondents also seek their costs and attorneys fees incurred in these arbitration proceedings.

**Liability**

The credible evidence failed to establish that Respondents breached a cognizable duty owed to Claimant, or made material misrepresentations to Claimant, in connection with the sale of the brokerage business to Refco. While it may be true that the more customer accounts transferred to Refco, the more Cargill stood to gain in the sale, there was insufficient credible evidence that Cargill improperly misled its clients and customers into continuing their account

Case No. 50 148 T 00217 07                                                                                   3
Stilton and CISFS/Cargill
Final Award of Arbitrators

activities with Refco. In this regard, the somewhat unsavory reputation of Refco in the brokerage business appears to have been well known; and no amount of due diligence on the part of Cargill could have uncovered the massive fraud and misconduct that lead to Refco's bankruptcy.

On the other hand, New York law governing the Agreement is clear that, absent a novation or specific release, the transferor/assignor of such a contract remains jointly and severally liable for the breaches of that contract by the transferee/assignee. Under the circumstances presented here, no novation or release of Respondents' obligations to Claimant was ever offered or even considered; and neither Claimant's failure to object to the transfer/assignment, nor the handwritten notation on Respondents' August 15, 2005, letter to Claimant, can relieve Respondents of their joint liability with Refco for Refco's breaches of the Agreement under New York law.

**Proximate Cause and Damages**

Claimant's damages of $54 million were a direct consequence of Refco's breaches of the Agreement; that is, among other things, Refco's October 13, 2005 moratorium on trading and withdrawals; liquidation of the account; and failure and refusal to return the monies in that account to Claimant. Refco's bankruptcy limited Claimant's ability to recover its damages from Refco occasioned by the breaches of the Agreement; the bankruptcy and bankruptcy law neither excused those breaches nor Respondents' joint liability therefor.

As conceded by Claimant in its final submissions, it is reasonable to expect that Stilton will receive 43.33 % of its $54 million in damages "from" Refco in the bankruptcy proceedings, leaving approximately $30.6 million due and owing from Respondents. (In this regard, we note that Cargill "caused" the transfer of the Agreement and, while both Respondents are responsible here, Cargill "caused" the dissolution of CISFS in 2006. Also, resolution/distributions with respect to the "preference claim" of $20 million is irrelevant to damages here since Refco's payment prior to bankruptcy was not a breach of the Agreement.)

Claimant's request for interest dating back to the breach (October 2005) is denied; the damages due from Respondents could not be "fixed" until the Panel heard and considered the proofs and allegations of the parties as set forth in this Award. Finally, each party shall bear its own costs of this proceeding, including attorneys' fees.

Accordingly, as and for an **AWARD** herein:

Case No. 50 148 T 00217 07                                                                                     4
Stilton and CISFS/Cargill
Final Award of Arbitrators

1. Respondents shall pay to Claimant the sum of THIRTY MILLION, SIX HUNDRED THOUSAND DOLLARS and NO CENTS ($30,600,000.00), plus interest at the legal rate from the date of this Award until said sum is paid in full; provided, however, that Respondents shall be given credit for any monies paid to Claimant on account of its $54 million claim in bankruptcy court in excess of $23.4 million.

2. The administrative fees and expenses of the International Centre for Dispute Resolution ("ICDR") totaling TWENTY TWO THOUSAND SIX HUNDRED FIFTY DOLLARS AND NO CENTS ($22,650.00) shall be borne by the parties as incurred; the compensation and expenses of the Arbitrators totaling THIRTY EIGHT THOUSAND EIGHT HUNDRED FORTY DOLLARS AND NO CENTS ($38,840.00) shall be borne 50% by Claimant and 50% by Respondents.

3. This Award is in full and complete settlement of any and all claims, counterclaims, defenses and off-sets properly submitted to the jurisdiction of the Arbitrators in this proceeding; and any claim or counterclaim not specifically granted herein is nonetheless deemed DENIED.

4. This Award may be executed in any number of counterparts, each of which shall be an original, and all of which together shall be deemed to be the Final Award in this matter.

We hereby certify that, for the purposes of Article 1 of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, U.S.A.

5/21/08
_____                    _____
Date                                          John F. Byrne, Esq.


_____                    _____
Date                                          Joanne Barak, Esq.


_____                    _____
Date                                          Peter Collins, Esq.

Case No. 50 148 T 00217 07                                                5
Stilton and CISFS/Cargill
Final Award of Arbitrators

I, John F. Byrne, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the individuals described in and who executed the foregoing instrument, which is my Final Award.

5/2/08
_____                    _____
Date                                        John F. Byrne, Esq.


I, Joanne Barak, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the individuals described in and who executed the foregoing instrument, which is my Final Award.


_____                    _____
Date                                        Joanne Barak, Esq.


I, Peter Collins, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the individuals described in and who executed the foregoing instrument, which is my Final Award.


_____                    _____
Date                                        Peter Collins, Esq.

Case No. 50 148 T 00217 07                                                                 4
Stilton and CISFS/Cargill
Final Award of Arbitrators

1. Respondents shall pay to Claimant the sum of THIRTY MILLION, SIX HUNDRED THOUSAND DOLLARS and NO CENTS ($30,600,000.00), plus interest at the legal rate from the date of this Award until said sum is paid in full; provided, however, that Respondents shall be given credit for any monies paid to Claimant on account of its $54 million claim in bankruptcy court in excess of $23.4 million.

2. The administrative fees and expenses of the International Centre for Dispute Resolution ("ICDR") totaling TWENTY TWO THOUSAND SIX HUNDRED FIFTY DOLLARS AND NO CENTS ($22,650.00) shall be borne by the parties as incurred; the compensation and expenses of the Arbitrators totaling THIRTY EIGHT THOUSAND EIGHT HUNDRED FORTY DOLLARS AND NO CENTS ($38,840.00) shall be borne 50% by Claimant and 50% by Respondents.

3. This Award is in full and complete settlement of any and all claims, counterclaims, defenses and off-sets properly submitted to the jurisdiction of the Arbitrators in this proceeding; and any claim or counterclaim not specifically granted herein is nonetheless deemed DENIED.

4. This Award may be executed in any number of counterparts, each of which shall be an original, and all of which together shall be deemed to be the Final Award in this matter.

We hereby certify that, for the purposes of Article 1 of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, U.S.A.

| | |
|---|---|
| _____ | _____ |
| Date | John F. Byrne, Esq. |
| | |
| _May 21, 2008_ | _Joanne Barak_ |
| /Date | Joanne Barak, Esq. |
| | |
| _____ | _____ |
| Date | Peter Collins, Esq. |

Case No. 50 148 T 00217 07                                                 5
Stilton and CISFS/Cargill
Final Award of Arbitrators

I, John F. Byrne, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the
individuals described in and who executed the foregoing instrument, which is my Final Award.

_____                              _____
        Date                                              John F. Byrne, Esq.

I, Joanne Barak, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the
individuals described in and who executed the foregoing instrument, which is my Final Award.

_____                              _____
        Date                                              Joanne Barak, Esq.

I, Peter Collins, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the
individuals described in and who executed the foregoing instrument, which is my Final Award.

_____                              _____
        Date                                              Peter Collins, Esq.

4

    1. Respondents shall pay to Claimant the sum of THIRTY MILLION, SIX HUNDRED THOUSAND DOLLARS and NO CENTS ($30,600,000.00), plus interest at the legal rate from the date of this Award until said sum is paid in full; provided, however, that Respondents shall be given credit for any monies paid to Claimant on account of its $54 million claim in bankruptcy court in excess of $23.4 million.

    2. The administrative fees and expenses of the International Centre for Dispute Resolution ("ICDR") totaling TWENTY TWO THOUSAND SIX HUNDRED FIFTY DOLLARS AND NO CENTS ($22,650.00) shall be borne by the parties as incurred; the compensation and expenses of the Arbitrators totaling THIRTY EIGHT THOUSAND EIGHT HUNDRED FORTY DOLLARS AND NO CENTS ($38,840.00) shall be borne 50% by Claimant and 50% by Respondents.

    3. This Award is in full and complete settlement of any and all claims, counterclaims, defenses and off-sets properly submitted to the jurisdiction of the Arbitrators in this proceeding; and any claim or counterclaim not specifically granted herein is nonetheless deemed DENIED.

    4. This Award may be executed in any number of counterparts, each of which shall be an original, and all of which together shall be deemed to be the Final Award in this matter.

    We hereby certify that, for the purposes of Article 1 of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, U.S.A.


_____          _____
Date                                            John F. Byrne, Esq.


_____          _____
Date                                            Joanne Barak, Esq.


_May 20, 2008_____          _____
Date                                            Peter Collins, Esq.

Case No. 50 148 T 00217 07                                                                                          5
Stilton and CISFS/Cargill
Final Award of Arbitrators

 

 

      I, John F. Byrne, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the individuals described in and who executed the foregoing instrument, which is my Final Award.

 

 

_____                          _____

           Date                                                                  John F. Byrne, Esq.

 

 

      I, Joanne Barak, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the individuals described in and who executed the foregoing instrument, which is my Final Award.

 

 

 

_____                          _____

           Date                                                                  Joanne Barak, Esq.

 

 

 

      I, Peter Collins, Esq., do hereby affirm upon my Oath as Arbitrator that I am one of the individuals described in and who executed the foregoing instrument, which is my Final Award.

 

 

*May 20, 2008*                                              _____

           Date                                                                  Peter Collins, Esq.



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

The rules and procedures listed below are not current. For the current versions of our rules and procedures, please go to the Dispute Resolution Services home page and select the desired rules.

Commercial Arbitration Rules and Mediation PROCEDURES
(Including Procedures for Large, Complex Commercial Disputes)
Amended and Effective September 15, 2005 (Fee Update).

TABLE OF CONTENTS

IMPORTANT NOTICE
INTRODUCTION
STANDARD ARBITRATION CLAUSE
ADMINISTRATIVE FEES
MEDIATION
LARGE, COMPLEX CASES

COMMERCIAL MEDIATION PROCEDURES
M-1. Agreement of Parties
M-2. Initiation of Mediation
M-3. Requests for Mediation
M-4. Appointment of the Mediator
M-5. Qualifications of the Mediator
M-6. Vacancies
M-7. Representation
M-8. Date, Time, and Place of Mediation
M-9. Identification of Matters in Dispute
M-10. Authority of the Mediator
M-11. Privacy
M-12. Confidentiality
M-13. No Stenographic Record
M-14. Termination of Mediation
M-15. Exclusion of Liability
M-16. Interpretation and Application of Procedures
M-17. Expenses
ADMINISTRATIVE FEES

COMMERCIAL ARBITRATION RULES
R-1. Agreement of Parties
R-2. AAA and Delegation of Duties
R-3. National Roster of Arbitrators
R-4. Initiation under an Arbitration Provision in a Contract
R-5. Initiation under a Submission
R-6. Changes of Claim

R-7. Jurisdiction
R-8. Mediation
R-9. Administrative Conference
R-10. Fixing of Locale
R-11. Appointment from National Roster
R-12. Direct Appointment by a Party
R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
R-14. Nationality of Arbitrator
R-15. Number of Arbitrators
R-16. Disclosure
R-17. Disqualification of Arbitrator
R-18. Communication with Arbitrator
R-19. Vacancies
R-20. Preliminary Hearing
R-21. Exchange of Information
R-22. Date, Time, and Place of Hearing
R-23. Attendance at Hearings
R-24. Representation
R-25. Oaths
R-26. Stenographic Record
R-27. Interpreters
R-28. Postponements
R-29. Arbitration in the Absence of a Party or Representative
R-30. Conduct of Proceedings
R-31. Evidence
R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence
R-33. Inspection or Investigation
R-34. Interim Measures
R-35. Closing of Hearing
R-36. Reopening of Hearing
R-37. Waiver of Rules
R-38. Extensions of Time
R-39. Serving of Notice
R-40. Majority Decision
R-41. Time of Award
R-42. Form of Award
R-43. Scope of Award
R-44. Award upon Settlement
R-45. Delivery of Award to Parties
R-46. Modification of Award
R-47. Release of Documents for Judicial Proceedings
R-48. Applications to Court and Exclusion of Liability
R-49. Administrative Fees
R-50. Expenses
R-51. Neutral Arbitrator's Compensation
R-52. Deposits
R-53. Interpretation and Application of Rules
R-54. Suspension for Nonpayment

EXPEDITED PROCEDURES
E-1. Limitation on Extensions

E-2. Changes of Claim or Counterclaim
E-3. Serving of Notices
E-4. Appointment and Qualifications of Arbitrator
E-5. Exchange of Exhibits
E-6. Proceedings on Documents
E-7. Date, Time, and Place of Hearing
E-8. The Hearing
E-9. Time of Award
E-10. Arbitrator's Compensation

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES
L-1. Administrative Conference

L-2. Arbitrators

L-3. Preliminary Hearing

L-4. Management of Proceedings

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION
O-1. Applicability
O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
O-8. Costs

ADMINISTRATIVE FEES
Fees
Refund Schedule
Hearing Room Rental

IMPORTANT NOTICE

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA. To ensure that you have the most current information, see our Web Site at www.adr.org.

INTRODUCTION

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government.

Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on all forms of out-of-court dispute settlement.

Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

*Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

*We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following controversy: (describe briefly) We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

In transactions likely to require emergency interim relief, the parties may wish to add to their clause the following language:

*The parties also agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to the proceedings.*

These Optional Rules may be found below.

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees.

The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

Mediation

The parties might wish to submit their dispute to mediation prior to arbitration. In mediation, the neutral mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation

Procedures. There is no additional administrative fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

If the parties want to adopt mediation as a part of their contractual dispute settlement procedure, they can insert the following mediation clause into their contract in conjunction with a standard arbitration provision:

*If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

*The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs.

The key features of these procedures include:

§ a highly qualified, trained Roster of Neutrals;

§ a mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

§ broad arbitrator authority to order and control discovery, including depositions;

§ presumption that hearings will proceed on a consecutive or block basis.

COMMERCIAL MEDIATION PROCEDURES

M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, they shall be deemed to have made these procedures, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation by filing with the AAA a submission to mediation or a written request for mediation pursuant to these procedures, together with the $325

Arch. Commercial Arbitration Rules and Mediation Procedures (effective September 22, ... Page 6 of 27

Case 1:08-cv-00361-JJF   Document 17-2   Filed 07/07/2008   Page 5 of 6

nonrefundable case set-up fee. Where there is no submission to mediation or contract providing for mediation, a party may request the AAA to invite another party to join in a submission to mediation. Upon receipt of such a request, the AAA will contact the other parties involved in the dispute and attempt to obtain a submission to mediation.

M-3. Requests for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the AAA and one copy with every other party to the dispute.

M-4. Appointment of the Mediator

Upon receipt of a request for mediation, the AAA will appoint a qualified mediator to serve. Normally, a single mediator will be appointed unless the parties agree otherwise or the AAA determines otherwise. If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

M-5. Qualifications of the Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the AAA shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the AAA will appoint another mediator. The AAA is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise.

M-7. Representation

Any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

M-8. Date, Time, and Place of Mediation

The mediator shall fix the date and the time of each mediation session. The mediation shall be held at the appropriate regional office of the AAA, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

M-9. Identification of Matters in Dispute

At least ten days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At

the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented.

The mediator may require any party to supplement such information.

M-10. Authority of the Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement.

Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice.

Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

M-11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

M-12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding:

(a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute;

(b) admissions made by another party in the course of the mediation proceedings;

(c) proposals made or views expressed by the mediator; or

(d) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

M-13. No Stenographic Record

There shall be no stenographic record of the mediation process.

M-14. Termination of Mediation

The mediation shall be terminated:

(a) by the execution of a settlement agreement by the parties;

(b) by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or

(c) by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

M-15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these procedures.

M-16. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

M-17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the AAA, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

ADMINISTRATIVE FEES

The nonrefundable case set-up fee is $325 per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the AAA shall estimate anticipated total expenses. Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the AAA shall render an accounting and return any unexpended balance to the parties.

COMMERCIAL ARBITRATION RULES

R-1. Agreement of Parties*+

(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

(b) Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs. Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

(c) Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000, exclusive of claimed interest, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-4 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

(d) All other cases shall be administered in accordance with Sections R-1 through R-54 of these rules.

* The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are nonnegotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

+ A dispute arising out of an employer promulgated plan will be administered under the AAA's National Rules for the Resolution of Employment Disputes.

R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Commercial Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

R-4. Initiation under an Arbitration Provision in a Contract

(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

(i) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.

(ii) The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.

(iii) The AAA shall confirm notice of such filing to the parties.

(b) A respondent may file an answering statement in duplicate with the AAA within 15 days after confirmation of notice of filing of the demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the party making the counterclaim shall forward to the AAA with the answering statement the appropriate fee provided in the schedule included with these rules.

(c) If no answering statement is filed within the stated time, respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(d) When filing any statement pursuant to this section, the parties are encouraged to provide descriptions of their claims in sufficient detail to make the circumstances of the dispute clear to the arbitrator.

R-5. Initiation under a Submission

Parties to any existing dispute may commence an arbitration under these rules by filing at any office of the AAA two copies of a written submission to arbitrate under these rules, signed by the parties. It shall contain a statement of the nature of the dispute, the names and addresses of all parties, any claims and counterclaims, the amount involved, if any, the remedy sought, and the hearing locale requested, together with the appropriate filing fee as provided in the schedule included with these rules. Unless the parties state otherwise in the submission, all claims and counterclaims will be deemed to be denied by the other party.

R-6. Changes of Claim

After filing of a claim, if either party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA. After the arbitrator is appointed, however, no new

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1 2008 Page 11 of 27

Case 1:08-cv-00361-JJF Document 17-2 Filed 07/07/2008 Page 27 of 27

or different claim may be submitted except with the arbitrator's consent.

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

R-8. Mediation

At any stage of the proceedings, the parties may agree to conduct a mediation conference under the Commercial Mediation Procedures in order to facilitate settlement. The mediator shall not be an arbitrator appointed to the case. Where the parties to a pending arbitration agree to mediate under the AAA's rules, no additional administrative fee is required to initiate the mediation.

R-9. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings and any other administrative matters.

R-10. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within 15 days after notice of the request has been sent to it by the AAA, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding.

R-11. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

(a) Immediately after the filing of the submission or the answering statement or the expiration of the time within which the answering statement is to be filed, the AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

(c) Unless the parties agree otherwise when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

R-12. Direct Appointment by a Party

(a) If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

(b) Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-17 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-17(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

(c) If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

(d) If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

(a) If, pursuant to Section R-12, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

(b) If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

(c) If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-11, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

R-14. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

R-15. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the demand or answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

R-16. Disclosure

(a) Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

(b) Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

(c) In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-16 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

R-17. Disqualification of Arbitrator

(a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for

(i) partiality or lack of independence,

(ii) inability or refusal to perform his or her duties with diligence and in good faith, and

(iii) any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-12 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

(b) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

R-18. Communication with Arbitrator

(a) No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-12 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings

and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

(b) Section R-18(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-17(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-17(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-18(a) should nonetheless apply prospectively.

R-19. Vacancies

(a) If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

(b) In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

(c) In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

R-20. Preliminary Hearing

(a) At the request of any party or at the discretion of the arbitrator or the AAA, the arbitrator may schedule as soon as practicable a preliminary hearing with the parties and/or their representatives. The preliminary hearing may be conducted by telephone at the arbitrator's discretion.

(b) During the preliminary hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

R-21. Exchange of Information

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

i) the production of documents and other information, and

ii) the identification of any witnesses to be called.

(b) At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

R-22. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and

adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

R-23. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person other than a party and its representatives.

R-24. Representation

Any party may be represented by counsel or other authorized representative. A party intending to be so represented shall notify the other party and the AAA of the name and address of the representative at least three days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

R-25. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

R-26. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

R-27. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

R-28. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

R-29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

## R-30. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) The parties may agree to waive oral hearings in any case.

## R-31. Evidence

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

## R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

(b) If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

## R-33. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

R-34. Interim Measures**

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

** The Optional Rules may be found below.

R-35. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall b e declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

R-36. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

R-37. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

R-38. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

R-39. Serving of Notice

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its

Arch. Commercial Arbitration Rules and Mediation Procedures effective September 1 Page 18 of 27

Case 1:08-cv-00361-NJE Document 17-2 Filed 07/07/2008 Page 34

representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (E-mail), or other methods of communication.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

R-40. Majority Decision

When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement, a majority of the arbitrators must make all decisions.

R-41. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

R-42. Form of Award

(a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law.

(b) The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

R-43. Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include:

(i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

R-44. Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

R-45. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-46. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

R-47. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration.

R-48. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

R-49. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or

counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

R-50. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

R-51. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

R-52. Deposits

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

R-54. Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

EXPEDITED PROCEDURES

E-1. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the demand for arbitration or counterclaim as provided in Section R-4.

E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

E-3. Serving of Notices

In addition to notice provided by Section R-39(b), the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

E-4. Appointment and Qualifications of Arbitrator

(a) The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

(b) The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

(c) The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-17. The parties shall notify the AAA within seven days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

E-5. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

E-6. Proceedings on Documents

Where no party's claim exceeds $10,000, exclusive of interest and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. The arbitrator shall establish a fair and equitable procedure for the submission of documents.

E-7. Date, Time, and Place of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

E-8. The Hearing

(a) Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two days after the hearing. For good cause shown, the arbitrator may schedule additional hearings within seven business days after the initial day of hearings.

(b) Generally, there will be no stenographic record. Any party desiring a stenographic record may arrange for one pursuant to the provisions of Section R-26.

E-9. Time of Award

Unless otherwise agreed by the parties, the award shall be rendered not later than 14 days from the date of the closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

E-10. Arbitrator's Compensation

Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES

L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call. The conference will take place within 14 days after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

(a) to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

(b) to discuss the views of the parties about the technical and other qualifications of the arbitrators;

(c) to obtain conflicts statements from the parties; and

(d) to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

L-2. Arbitrators

(a) Large, Complex Commercial Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September...

Case 1:08-cv-00361-LJF    Document 17-2    Filed 07/07/2008    Page 39 of 86   23 of 27

(b) The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the Regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

L-3. Preliminary Hearing

As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the preliminary hearing will be conducted by telephone conference call rather than in person. At the preliminary hearing the matters to be considered shall include, without limitation:

(a) service of a detailed statement of claims, damages and defenses, a statement of the issues asserted by each party and positions with respect thereto, and any legal authorities the parties may wish to bring to the attention of the arbitrator(s);

(b) stipulations to uncontested facts;

(c) the extent to which discovery shall be conducted;

(d) exchange and premarking of those documents which each party believes may be offered at the hearing;

(e) the identification and availability of witnesses, including experts, and such matters with respect to witnesses including their biographies and expected testimony as may be appropriate;

(f) whether, and the extent to which, any sworn statements and/or depositions may be introduced;

(g) the extent to which hearings will proceed on consecutive days;

(h) whether a stenographic or other official record of the proceedings shall be maintained;

(i) the possibility of utilizing mediation or other non-adjudicative methods of dispute resolution; and

(j) the procedure for the issuance of subpoenas.

By agreement of the parties and/or order of the arbitrator(s), the pre-hearing activities and the hearing procedures that will govern the arbitration will be memorialized in a Scheduling and Procedure Order.

L-4. Management of Proceedings

(a) Arbitrator(s) shall take such steps as they may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases.

(b) Parties shall cooperate in the exchange of documents, exhibits and information within such party's control if the arbitrator(s) consider such production to be consistent with the goal of achieving a just, speedy and cost-effective resolution of a Large, Complex Commercial Case.

(c) The parties may conduct such discovery as may be agreed to by all the parties provided, however, that the arbitrator(s) may place such limitations on the conduct of such discovery as the arbitrator(s)

shall deem appropriate. If the parties cannot agree on production of documents and other information, the arbitrator(s), consistent with the expedited nature of arbitration, may establish the extent of the discovery.

(d) At the discretion of the arbitrator(s), upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator(s) may order depositions of, or the propounding of interrogatories to, such persons who may possess information determined by the arbitrator(s) to be necessary to determination of the matter.

(e) The parties shall exchange copies of all exhibits they intend to submit at the hearing 10 business days prior to the hearing unless the arbitrator(s) determine otherwise.

(f) The exchange of information pursuant to this rule, as agreed by the parties and/or directed by the arbitrator(s), shall be included within the Scheduling and Procedure Order.

(g) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

(h) Generally hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

O-8. Costs

The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the panel to determine finally the apportionment of such costs.

ADMINISTRATIVE FEES

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* when filing a consumer-related claim.

The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-

application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

Fees

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

Fee Schedule for Claims in Excess of $10 Million .

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

- 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.
- 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.
- 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

Hearing Room Rental

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

AAA235

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In the Matter of the Arbitration between:

STILTON INTERNATIONAL
HOLDINGS LIMITED,

                              Petitioner

          v.

CIS FINANCIAL SERVICES, INC. and
CARGILL, INCORPORATED,

                              Respondents.

Case No.

**CERTIFICATION**

COMMONWEALTH OF THE BAHAMAS)
                                                    ):ss
CITY OF NASSAU                              )

CRAIG JOHN MAWDSLEY, being duly sworn, deposes and says:

1.      I am the General Counsel for the petitioner Stilton International Holdings Limited
("Stilton"), as well as a Senior Trader at Stilton.

2.      In such capacity, I am in general charge of the contracts and agreements to which Stilton
is a party.

3.      I have reviewed Stilton's file concerning the Foreign Exchange Account Agreement
between Stilton and CIS Financial Services, Inc.

2.      I hereby certify that the Foreign Exchange Account Agreement, dated October 17, 1997,
attached hereto is a true and exact copy of the same document contained in said file.

_____
Craig John Mawdsley

Subscribed and sworn to before me
this 9th day of June, 2008.

_____
Notary Public

SK 2538 00004890433

J. Michael Saunders
Messrs. Callenders & Co.
Chambers, One Millars Court,
Nassau, Bahamas
Notary Licence 0536
My Licence expires 31st December, 2008

FROM : TRADING

PHONE NO. : 809+363+2638

Stilton International
_____
Customer Name

_____
Account Number

# Foreign Exchange
# Account Agreement

# CIS FINANCIAL SERVICES, INC.

Suite 2300
233 S. Wacker Drive
Chicago, Illinois 60606

10/04/94

OCT 17 '97 14:17                    809+363+2638     PAGE.02

FROM : TRADING                                          PHONE NO. : 809+363+2638

# FOREIGN EXCHANGE ACCOUNT AGREEMENT

_Stilton International Holdings CTD._
_____        _____
Customer Name                                                                      Account Number

TO:     CIS Financial Services, Inc.
        233 S. Wacker Drive, Suite 2300
        Chicago, Illinois 60606

In consideration of the Agreement of CIS Financial Services, Inc. ("CISFS") to act as broker for the undersigned (hereinafter referred to as the "Customer") in any over-the-counter ("O.T.C.") Foreign Exchange transactions, the Customer agrees, in respect to all such O.T.C Foreign Exchange accounts which the Customer now has or may at any time have with CISFS or its successors, including accounts from time to time closed and thus reopened (each an "Account"), as follows:

## 1. Scope of this Agreement; Risks.

All transactions, and all Contracts entered into between CISFS and the Customer, shall be governed by the terms of this Agreement except to the extent (if any) that CISFS shall agree in writing, or notify the Customer in writing or by telex or telecopy that other or additional terms apply. Any proposals for, additions to, or modifications of this Agreement, absent written agreement by CISFS to the contrary, are hereby void. The terms of each Contract (as defined below) shall be as set forth in the confirmation relating thereto sent by CISFS to the Customer. The Customer understands and recognizes that transactions in Foreign Exchange are unregulated by any governmental entity or self-regulatory organization and that the activities of CISFS with respect to such transactions are therefore not supervised or subject to oversight. Bearing this in mind, the Customer represents that it is aware of the risks inherent in the trading of Foreign Exchange and is financially able to bear such risks and withstand any losses incurred.

## 2. Definitions.

For the purposes of this Agreement the following definitions apply:

(a) _Business Day_ means, with respect to the United States, any day on which banks are open for business (other than a Saturday or Sunday) in New York City, and with respect to any country other than the United States, any day on which banks are open for business (other than a Saturday or Sunday) in the principal financial center of the relevant country.

(b) _Contract_ means an agreement between CISFS and the Customer for the delivery of a specified amount of a specified currency in return for a specified amount of a different specified currency for settlement on a specified Value Date. The amounts of the two currencies are released by a specified price or rate. Furthermore, "Contract" means a Spot Contract or a Forward Contract (as defined below), or both, as the context of this Agreement requires.

(c) _Daily Cutoff_ means the point in time selected each Business Day by CISFS after which any Contract entered into will be considered to have as its Trade Date the next Business Day. The Daily Cutoff will occur at a time selected solely by CISFS and may vary from day to day.

(d) _Federal Bankruptcy Code_ means The Bankruptcy Code of 1978, 11 U.S.C. §101, et seq.

(e) _Foreign Currency_ means the lawful currencies of the applicable countries as specified in Schedule 1 attached to this Agreement,

which schedule may be amended from time to time by mutual agreement of CISFS and the Customer.

(f) _A Forward Contract_ means a Contract where the Value Date is at least one Business Day later than the Business Day that would be the Value Date if the Contract were a Spot Contract. No Forward Contract shall have a Value Date later than the Business Day which is six months after the spot Value Date.

(g) _Market Value_ means the U.S. Dollar Value, determined by CISFS in its sole discretion, that CISFS determines it would receive if it sold the relevant collateral for immediate delivery in the relevant market.

(h) _Open Position_ means any Contract that has not settled.

(i) _A Spot Contract_ means a Contract where the Value Date is the second Business Day following the Trade Date; provided, however, that with respect to any Spot Contract involving the European Currency Unit (ECU), the Value Date is the third Business Day following the Trade Date; provided further, however, that with respect to any Spot Contract involving only U.S. Dollars and Canadian Dollars, the Value Date is the next Business Day following the Trade Date.

(j) _Trade Date_ with respect to any Contract means the date on which the Contract is entered into between CISFS and the Customer, except in the case of any Contract entered into after the Daily Cutoff, but before the next U.S. Business Day, which shall have as its Trade Date the next U.S. Business Day.

(k) _U.S. Dollar Value_ means the amount of U.S. Dollars at any moment in time which would result from the conversion of the relevant Foreign Currency into U.S. Dollars at CISFS' then prevailing exchange rates for buying or selling, as applicable, such Foreign Currency.

(l) _Value Date_ means, with respect to any Contract, the applicable settlement date specified in the confirmation relating to the particular Contract. A Value Date must be a Business Day in the United States and, for each Foreign Currency specified in the Contract, the country in which the Foreign Currency is the lawful currency.

Other capitalized terms in this Agreement shall have those meanings provided for herein.

2

FROM : TRADING                  PHONE NO. : 809+363+2638

**3. Hypothecation; Collateral; Additional Collateral.**

(a) The Customer agrees that securities, including Collateral securities, and other property in the Customer's Account(s) may be carried in CISFS' general loans and may be pledged, repledged, hypothecated or rehypothecated separately or in common with other securities and property for the sum due to CISFS thereon or for a greater sum and without regard to whether or not such securities or property remain in the possession and control of CISFS.

(b) As security for the Customer's obligations to CISFS hereunder, the Customer agrees to deposit and maintain collateral with CISFS at its head office in Chicago, Illinois, or other location or account as CISFS may direct ("the Collateral Account") as follows:

    (i) Only instruments in such form as specified in Schedule 2 of this Agreement shall be acceptable to CISFS as Collateral for the purposes of this Agreement. CISFS may change said schedule by notifying the Customer in writing. Any change shall be effective immediately upon receipt of such notice by the Customer. The value of any Collateral provided by the Customer shall be subject to the haircuts listed in Schedule 2 of this Agreement. CISFS' acceptance of any Collateral may be subject to other limitations and/or qualifications specified in Schedule 2 of this Agreement. The Customer shall execute and deliver such separate pledge or deposit agreements including without limitation, security agreements or financing statements, as may be requested by CISFS. Such Collateral, together with the Contracts and all other monies, securities, treasury bills and other property of the Customer now or any time hereafter delivered, conveyed, transferred, assigned or paid to CISFS or coming into CISFS' possession in any manner whatsoever are hereby pledged to CISFS and shall be subject to a security interest in CISFS' favor for the discharge of the Customer's obligations to CISFS under this Agreement and the Contracts. The Customer hereby represents and warrants to CISFS that the Customer holds good and marketable title to all Collateral and that the Collateral delivered to CISFS is free and clear of any and all liens, claims, pledges or encumbrances of any kind.

    (ii) The Customer agrees to maintain at all times with CISFS Collateral in such form and in such amount as CISFS may from time to time request orally or in writing. The Customer acknowledges that any changes regarding the amount and form of Collateral may also result in a request for additional Collateral. The Customer shall respond to such requests by immediately supplying sufficient additional Collateral.

    (iii) In all cases, Collateral shall be deemed received by CISFS when such Collateral shall be actually received in the Collateral Account and CISFS shall be notified of such receipt as determined by CISFS in its sole discretion.

(c) CISFS will monitor on a daily basis, or more frequently as CISFS solely determines, the Customer's Collateral Account in the following manner:

    (i) CISFS will compute the Customer's "Total U.S. Dollar Market Value of Collateral" by aggregating (a) the U.S. Dollars in the Collateral Account, (b) the U.S. Dollar Value of any Foreign Currencies in the Collateral Account, and (c) the U.S. Dollar Value of the Market Value, as determined solely by CISFS, of other Collateral in the Collateral Account, subject to any and all haircuts, limitations, and qualifications listed in Schedule 2 of this Agreement.

    (ii) CISFS will compute the Customer's "Net U.S. Dollar Value of Gains and Losses on Open Positions" as follows:

For each Open Position, the gain or loss, if any, is computed by assuming that the relevant Contract is offset in the market at the relevant foreign exchange rate then prevailing for the Value Date of the Contract, as determined solely by CISFS. The U.S. Dollar Value of these computed gains and/or losses, if any, is computed by assuming that the gain or loss is converted into U.S. Dollars in the market at the relevant foreign exchange rate then prevailing for the Value Date of the Contract, as determined solely by CISFS. The U.S. Dollar Value of the gain or loss of each Open Position will be aggregated together to determine the "Net U.S. Dollar Value of Gains and Losses on Open Positions."

    (iii) CISFS will compute the Customer's "Net Collateral" by netting together the "Net U.S. Dollar Value of Gains and Losses on Open Positions" and the "Total U.S. Dollar Market Value of Collateral."

    (iv) CISFS will compute the Customer's "Total Required Initial Collateral" and "Total Required Maintenance Collateral" amounts in the following manner:

       (1) For each Open Position that involves a particular set of two currencies, (e.g. all Contracts involving only British Pounds and German Marks) the quantity of that currency specified as the "Defined Currency" in Schedule 3 of this Agreement shall be divided by the quantity specified as the "Defined Quantity" in Schedule 3 of this Agreement. The result, which will be negative in instances when the Customer is short the first currency of the currency pair, and positive otherwise, will be called the "Unit-Equivalent."

       (2) The "Unit-Equivalent" of each Open Position will be multiplied by the amount specified in Schedule 3 of this Agreement as the "Required Initial Collateral per Unit-Equivalent" to determine the "Required Initial Collateral" for the particular Open Position.

       (3) The "Total Required Initial Collateral" is determined by aggregating the "Required Initial Collateral" for all Open Positions.

       (4) The "Unit-Equivalent" of each Open Position will be multiplied by the amount specified in Schedule 3 of this Agreement as the "Required Maintenance Collateral per Unit-Equivalent" to determine the "Required Maintenance Collateral" for the particular Open Position.

       (5) The "Total Required Maintenance Collateral" is determined by aggregating the "Required Maintenance Collateral" for all Open Positions.

       (6) CISFS may change Schedule 3 of this Agreement at any time by notifying the Customer verbally or in writing. Any change shall be effective immediately upon such notification. The Customer acknowledges that any changes regarding Schedule 3 of this Agreement may result in a request for additional Collateral. The Customer shall respond to such requests by immediately supplying sufficient additional Collateral.

(d) The Customer agrees to maintain the Collateral Account at all times so that the following three conditions are met:

    (i) the "Total U.S. Dollar Market Value of Collateral" is greater than or equal to (USD) 250,000.00 (Two hundred fifty thousand), AND

    (ii) the "Total U.S. Dollar Market Value of Collateral" is greater than or equal to the "Total Required Initial Collateral," AND

3

(iii) The "Net Collateral" is greater than or equal to the "Total Required Maintenance Collateral."

(e)  If at any time one or more of the conditions listed in part (d) of section 3 of this Agreement are not met, the Customer shall be deemed to have a "Collateral Deficiency" and shall be obligated to immediately deliver sufficient additional Collateral to CISFS, and/or offset open positions so as to meet all of the said conditions.

(i)  When the Customer has a "Collateral Deficiency," it shall not create any new positions, and may trade only to offset existing positions.

(ii)  If CISFS determines, in its sole discretion, that the Customer has a Collateral Deficiency, CISFS shall have the right to offset, close out, and/or liquidate any open positions in the Customer's Account, and any such offsetting, closing out, and/or liquidating transactions may be made in a manner solely determined by CISFS.

(iii)  The Customer agrees that additions to Collateral are due and must be paid immediately upon determination by CISFS, in its sole discretion, that there is a need for additional Collateral in any of the Customer's Accounts. The Customer hereby represents that it is able to effect same-day payment of U.S. Dollar funds to CISFS.

(f)  The Customer shall not make a request for the withdrawal of Collateral if the requested withdrawal will cause any of the conditions listed in part (d) of section 3 of this Agreement to not be met.

4.  Trading.

(a)  The Customer acknowledges CISFS' right to limit, without notice to the Customer, the number and/or size of Open Positions which the Customer may maintain or acquire through CISFS.

(b)  CISFS reserves the right to refuse to accept any order.

(c)  With respect to any Open Position which has at its Value Date the same date as the Value Date which would apply for Spot Contracts involving the same two currencies and entered into on the current day, CISFS reserves the right to require the Customer to offset the Open Position in the market or roll it in the market to a later Value Date.

(d)  If for any reason CISFS is unable to execute a Contract with its counterparty at the price quoted to the Customer, CISFS will have no obligation to the Customer to enter into the Contract with the Customer at the quoted price.

(e)  The Customer recognizes that exchange rates it may view on electronic market information screens (e.g. Reuters, Telerate, etc.) are only indications of exchange rates, and may or may not reflect actual exchange rates available to CISFS or the Customer.

5.  Commissions.

The Customer agrees to pay when due CISFS's charges for commissions at rates specified in Schedule 4 of this Agreement.

6.  Offsetting Contracts.

Whenever there may exist in any of or between any of the Customer's foreign exchange accounts two or more open and opposite Contracts providing for the purchase and sale of the same foreign currency on the same Value Date, CISFS may, in its sole discretion, elect to treat the Contracts as a single transaction, and upon the Value Date of the Contracts, the net difference between the amounts payable under the contracts, and/or the net difference between the quantities of currency

deliverable thereunder, shall be paid and/or delivered, as the case may be.

7.  Delivery of Foreign Currency.

Delivery of foreign currency shall be made to the bank specified by the purchaser in a major city in the country in which the foreign currency is the legal tender. Unless otherwise agreed to by CISFS and the Customer in writing, the foreign currency shall be deliverable by cable or wire transfer. All payments to be made in U.S. Dollars shall be made by wire transfer of immediately available funds to a bank in a major U.S. city specified by the purchaser. CISFS may require payment of amounts due to it on any day simultaneously with or prior to payment of amounts due from it on that day. CISFS and the Customer shall both exchange, make use of, and periodically update and confirm standing payment instructions.

8.  Events of Default.

The occurrence of one or more of the following events shall constitute a "Default" under this Agreement:

(a)  The Customer shall fail to pay any amount hereunder or under any Contract when due;

(b)  The Customer shall (i) have an order for relief entered with respect to it under the Federal Bankruptcy Code; (ii) not pay, or admit in writing its inability to pay its debts generally as they become due; (iii) make an assignment for the benefit of creditors; (iv) apply for, seek, consent to or acquiesce in, the appointment of a receiver, custodian, trustee, examiner, liquidator or similar official for it or any substantial part of its property; (v) institute any proceedings seeking an order for relief under the Federal Bankruptcy Code or seeking to adjudicate it a bankrupt or insolvent, or seeking dissolution, winding up, liquidation, reorganization, arrangement, adjustment or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization, or relief of debtors, or fail to file an answer or other pleading denying the material allegations of any such proceeding filed against it, (vi) take any corporate action to authorize or effect any of the foregoing actions set forth in this subparagraph, or (vii) fail to contest in good faith any appointment or proceeding described in (c) below;

(c)  Without the application, approval or consent of the Customer, a receiver, trustee, examiner, liquidator, or similar official shall be appointed for the Customer or any substantial part of its property, or a proceeding described in (b) above shall be instituted against the Customer and such appointment continues undischarged or such proceeding continues undismissed or unstayed for a period of 30 consecutive days;

(d)  Any court, governmental or governmental agency shall condemn, seize or otherwise appropriate or take custody or control of all or any substantial portion of the property of the Customer;

(e)  Any representation or warranty made by the Customer in this Agreement or the Contracts shall be materially false as of the date on which it was made, or Customer shall fail or omit to state any fact which is necessary to make the representations and warranties herein not misleading;

(f)  The Customer shall fail to comply with any of the terms or provisions of this Agreement or of any Contract;

(g)  The Customer fails to deliver sufficient additional Collateral upon request from CISFS;

(h)  The Customer shall fail to perform any term or provision of any Agreement to which it is a party, including but not limited to any foreign exchange contract, the effect of which is to cause an event of default or termination or similar event howsoever defined pursuant to any such agreement or

4

(i)  CISFS, in its sole discretion, considers it necessary for its protection to terminate this Agreement and exercises its remedies as provided below.

### 9.  Remedies.

In the event any Default occurs, CISFS is authorized to offset and to sell or purchase for the Customer's account any Contract in any manner which CISFS shall deem necessary in its sole discretion and to dispose of, as CISFS deems appropriate, any or all of the Collateral held by CISFS and any of the Customer's other property or assets at any time held by CISFS or Cargill Investor Services, Inc.  It is understood and agreed that any prior tender, demand or call of any kind from CISFS, or prior notice from CISFS, of the time and place of such sale or purchase shall not be considered a waiver of CISFS' right to sell or purchase any Collateral or to offset at any time as herein provided, nor shall CISFS' failure to make such a demand or call waive CISFS' right to take such action without such tender, demand, call or notice in the future.  Except for the expenses incurred in connection with any such actions, CISFS may apply any remaining proceeds to the payment of any other obligations the Customer may owe to CISFS pursuant to this Agreement or any Contract, and in the event such proceeds are insufficient for payment of all such obligations, the Customer shall, within 24 hours of CISFS giving notice orally or in writing, pay to CISFS the amount of such deficit, together with interest thereon for each day such deficit is outstanding and remains unpaid until paid at a rate per annum, on a 365 day year/actual number of days elapsed basis, equal to an overdraft rate determined by CISFS in its sole discretion for the relevant Foreign Currency, or the Prime Rate (as quoted by Chase Manhattan Bank, New York) plus two percent for U.S. Dollars, plus all costs of collection, including reasonable attorneys' fees.

Without limiting anything in the foregoing, if any Default as described in Section 8(b) or 8(c) occurs, then all amounts due or to become due by the Customer under this Agreement and under all Contracts shall immediately become due and payable, the Collateral Account shall be deemed closed, all Contracts shall be deemed Offset and all Collateral shall be deemed to have been applied to the obligations of the Customer under this Agreement and any Contracts all without any election, notice or action by CISFS and all without any liability on CISFS' part to the Customer or any third party.  If any other Default shall occur, CISFS may, by notice either orally or in writing to the Customer, declare any or all amounts due or to become due by the Customer under this Agreement or under any Contracts to be due and payable, whereupon all of such amounts as CISFS shall designate and such notice shall become immediately due and payable and CISFS may take any and all of the following actions, all without any liability on CISFS' part to the Customer or any third party; (i) close the Cash and Collateral Account; (ii) offset, sell or assign any or all Contracts; and (iii) apply the Collateral as provided above.

Nothing in the foregoing shall be deemed to waive, limit, terminate, modify, or otherwise change any rights or remedies available to CISFS of law or in equity, or the Customer's liability to CISFS for the payment of any debit balance owing in the accounts of the Customer with CISFS.  The Customer is liable for any deficiency remaining in any such account or on any Contracts in the event of the offset or liquidation thereof, in whole or in part.

### 10.  Authorization to Transfer between Accounts.

CISFS may, without notice, transfer any money or other property interchangeably between any accounts of the Customer with CISFS or any of its affiliates, including Cargill Investor Services, Inc., except that any transfer from a commodity or securities account which is subject to regulations under the Commodity Exchange Act, Securities Act of 1933 or Securities Exchange Act of 1934, to a non-regulated account and/or a Foreign Exchange Account shall have such other authorization by the Customer as is required by such laws and such regulations.  The Customer authorizes CISFS to debit immediately any

margin or collateral payment called for to any of its accounts including Foreign Exchange Accounts showing a balance in its favor.

### 11.  Matters Precedent; Corporate Resolution.

CISFS shall not be required to enter into any Contracts with the Customer unless and until all legal matters incident to such Contracts shall be satisfactory to CISFS and its counsel, the provisions of paragraph 3(b) are met to the satisfaction of CISFS and its counsel, a duly executed copy of this Agreement is furnished to CISFS by the Customer, the Customer establishes the Collateral Account, and the Customer's standing payment instructions are furnished to CISFS.  In addition, within 10 days of the date of this Agreement, the Customer (if a partnership or corporation) shall deliver to CISFS a certified copy of (i) an authorizing resolution of the Customer Board of Directors substantially in the form attached hereto or otherwise as acceptable to CISFS; and (ii) the names, titles, signatures, and phone numbers, including home phone numbers where applicable, of the persons duly authorized by the Customer to execute and deliver this Agreement and to initiate transactions in O.T.C. foreign exchange for the Customer's account.  CISFS shall be entitled to rely on any such evidence until informed in writing by the Customer of any change.

### 12.  Death; Incompetency.

If the Customer should die or become incompetent, any pending order shall be validly executed by CISFS, up to the time it receives written notice of the death or incompetence of the Customer, and CISFS is hereby indemnified against any loss arising therefrom.

### 13.  Separate Contracts.

Each Contract for the purchase and sale of Foreign Currency hereunder is a separate Contract even though more than one such Contract may be included on a single confirmation.

### 14.  Joint Accounts; Trust Accounts.

If this Agreement is extended to more than one natural person as the Customer, all such natural persons agree to be jointly and severally liable for the obligations assumed in this Agreement.  If this Facility is extended to a trust, joint ownership, or partnership, the Customer hereby agrees to indemnify, defend, save and hold free and harmless CISFS for any losses, costs and expenses resulting from breach of any fiduciary duty or allegation thereof.

### 15.  Limitation of Liability.

CISFS will not be responsible for delays or failures in the delivery of any Foreign Currency within the time specified for the delivery thereof to the extent the failure is caused by a breakdown of communication facilities or by any other cause beyond CISFS' reasonable control.

### 16.  Collection Expenses.

The Customer agrees to pay any and all losses, costs, expenses, interest charges and fees, including attorneys' fees, which attorneys may be employees of CISFS or its affiliates, paid or incurred by CISFS in connection with the collection and enforcement of this Agreement, the Collateral and the Contract.

### 17.  Arbitration.

Any controversy arising out of or relating to transactions in this Account, this Agreement or the breach hereof or thereof shall be settled by arbitration pursuant to the commercial arbitration rules of the American Arbitration Association.  Judgment upon any award entered by the arbitrators may be entered in any court of competent jurisdiction.  Any such action must be brought within two years after the date of cause of action accrued.

5

FROM : TRADING                                          PHONE NO. : 809+363+2638

18. **Full Disclosure.**

The Customer additionally represents to CISFS that the information provided by the customer in connection with this agreement is full, complete and accurate and CISFS is entitled to rely on this information until CISFS receives written notice from the customer of any change in such information.

19. **Notification.**

Any notices and other communications may be transmitted to the Customer at the address, telephone or telefax number given herein, or at such other address, telephone or telefax number as the Customer hereafter shall notify CISFS in writing, and all notices or communications shall be deemed transmitted when telephoned, faxed or deposited in the mail by CISFS or CISFS' representative, whether actually received by the Customer or not. Confirmations and account statements shall be deemed accurate unless objected to in writing within one business day from the date of such notice and such objection(s) delivered to CISFS at 233 South Wacker Drive, Suite 2300, Chicago, Illinois, 60604, Attention: Treasurer, telefax number (312) 460-4739, telephone number (312) 460-4000. In the event the Customer fails to receive a faxed confirmation within one Business Day of the date of the transaction, the Customer agrees to notify CISFS at the above address via fax immediately.

20. **Governing Law.**

This Agreement is made under and shall be governed by laws of the State of New York in all respects, including construction and performance. This Agreement shall be binding upon you and/or your estate, executors, administrators, successors and/or assigns.

21. **Disclaimer.**

The Customer acknowledges that CISFS is ultimately owned by Cargill, Incorporated and is under the common control of Cargill, Incorporated with Cargill Investor Services, Inc. The Customer further acknowledges that the market recommendations of CISFS, if any, may or may not be consistent with the market position or intentions of Cargill, Incorporated, Cargill Investors Services, Inc. or their subsidiaries and/or affiliates. The market recommendations of CISFS, if any, are based upon information believed to be reliable, but CISFS cannot and does not guarantee the accuracy or completeness thereof or represent that following such recommendations will eliminate or reduce the risks inherent in transactions in foreign currency.

22. **Telephone Recordings.**

CISFS is hereby granted permission to record telephone conversations between its employees and the Customer. The Customer agrees that such recording may be used as evidence by either party in any disputes between CISFS and the Customer.

---

**Corporate Account:**          (Also sign Corporate Resolution)

The Customer represents and warrants that the Corporation is duly organized and in good standing under the laws of its country or state of incorporation and that trading in over-the-counter Foreign Exchange transactions for hedging or speculation is within the powers granted to it. The undersigned represents that he/she has full authority to enter into this Agreement on behalf of the Corporation and is concurrently furnishing to CISFS a Certified Resolution as required by CISFS.

Attest:                                    _Stilton International Holdings Ltd_
                                                     Customer (Corporation)
_MBerkett_

Date: _10/17/97_                    By: _Simon Berkett_

                                           Title: _____

---

**Individual Account:**

The undersigned represents that this is an individual or sole proprietorship account and no one else has an interest in this account.

Date: _____

                                           Individual

---

6

FROM : TRADING                                    PHONE NO. : 809+363+2638

## Corporate Resolution:

### Certified Resolution of Board of Directors

I, the undersigned, do hereby certify that the following is a complete, true and correct copy of certain resolutions of the Board of Directors of ___ Stilton International Holdings Ltd , a corporation duly organized and existing under the laws of the State of (Country) British Virgin Islands , having its principal office at P.O. Box 146 Road Town , City of Tortola , State of (Country) British Virgin Isl. , which resolutions were duly adopted at a duly called meeting of said Board, held on 8 March , 19 95 , a quorum being present, and are set forth in the minutes of the meeting; that I am the keeper of the corporate seal and of the minutes and records of this Corporation; and that the said resolutions have not been rescinded or modified:

"BE IT RESOLVED, That the Director(s), President or any Vice President of this Corporation or Simon Berkett _____ (list individual(s)) be and hereby is authorized to establish and maintain one or more accounts for the purpose of trading in foreign exchange for present or future delivery for hedging; or speculation for the account and risk of this Corporation through and with CIS Financial Services, Inc. (hereinafter the Broker), maintaining offices at Chicago, Illinois, U.S.A., as said firm is now constituted or may be hereafter constituted, the authority hereby granted including the power to do any and/or all of the following:

To give written or oral instructions to the Broker with respect to said transactions; to bind and obligate the Corporation to and for the carrying out of any contract, arrangement or transaction which shall be entered into by any such director, officer and/or agent for and on behalf of the Corporation with or through the Broker; to pay in cash or by checks and/or drafts drawn upon the funds of the Corporation such sums as may be necessary in connection with any of the said accounts; to deliver foreign currencies to the Broker; to order the transfer or delivery thereof to any other person whatsoever; to affix the corporate seal to any documents or agreements, or otherwise; to sign for the Corporation all releases, powers of attorney and/or other documents in connection with any such account, and to agree to any terms or conditions to control any such account; to accept delivery of any foreign currencies; to appoint any other person or persons to do any and all things which any of the said officers and/or agents is hereby empowered to do and, generally to do and take all action necessary in connection with the account or considered desirable by such director, officer and/or agent with respect thereto.

BE IT FURTHER RESOLVED: That Broker be directed to send written confirmations of all foreign exchange trades effected by Broker for this Corporation and all statements of account(s) of this Corporation with Broker and other pertinent records and documents to Joann McPike (Note: the person designated to receive written notice of transactions must be someone other than the person(s) authorized to trade for the corporation) who is hereby authorized to receive and acquiesce in the correctness of such confirmations, statements and other records and documents;

BE IT FURTHER RESOLVED: That any and all past transactions of any kind herein authorized, which may have been heretofore made on behalf of this Corporation through or with Broker be and hereby are ratified.

BE IT FURTHER RESOLVED: That Broker is authorized to act upon the authority of these resolutions until receipt by it of a certificate showing rescission or modification thereof signed by a Director or Secretary of this Corporation and under its seal, and that said firm is also authorized to recognize and deal with the directors or officers of this Corporation whose names are set forth in this certificate, setting forth the names of another person or persons and such directors or officers."

I FURTHER CERTIFY that the Director(s) or President of this Corporation are Harald McPike and that the Vice Presidents of this Corporation are _____

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of this Corporation this day of 17 October 19 97.

_Harald L. Pik_
_____
Director / Secretary

8

FROM : TRADING

PHONE NO. : 809+363+2639

## Wire Transfer Instructions

Wire Transfer Instructions

Please provide full wire transfer instructions and the individuals authorized to amend payment instructions in the following format:

Bank Name: _Swiss Bank Corp._     City, State: _Zürich_
(or Country if Outside the U.S.)

Bank ABA #: _____

For U.S. Banks, the Nine Digit Number which contains FED Routing Information.

Account Number: **Redacted**

Account Name: _Stilton International Holdings C+O_

Further Credit Information (if necessary) _____

Note:   A U.S. Correspondent Bank is required if ultimate beneficiary bank is outside of the U.S.

U.S. Correspondent Bank: _____

Bank ABA #: _____

Changes to these instructions must be communicated to CISFS two (2) business days prior to the date amended instructions are to be used.  Only the authorized signers designated below will be permitted to add or amend outgoing payment instructions.

| Name | Title | Signature |
|---|---|---|
| Harald McPike | President | Harald L. McP... |
| | | |
| | | |
| | | |

Acknowledged this _17th_ day of _October_, 19_97_.

By: _Harald McPike_

10

FROM : TRADING                                    PHONE NO. : 809+363+2638

Schedule 1

The Foreign Currencies under this Agreement are:

Australian Dollar
Austrian Schilling
Belgian Franc
British Pound
Canadian Dollar
Danish Kroner
Dutch Guilder
European Currency Unit (ECU)
Finnish Markka
French Franc
German Mark
Greek Drachma
Hong Kong Dollar
Indian Rupee
Indonesian Rupiah
Italian Lira
Japanese Yen
Malaysian Ringgit
New Zealand Dollar
Norwegian Krona
Portuguese Escudo
Saudi Riyal
Singapore Dollar
South African Rand
Spanish Peseta
Swedish Kroner
Swiss Franc
Thai Baht

11

## Schedule 2

CISFS considers as acceptable collateral the following:

1.    Immediately-available U.S. Dollar funds.

2.    Immediately available Foreign Currency deposits (only those currencies listed in Schedule 1).

PHONE NO. : 809+363+2638

FROM : TRADING
      SEP 22 '97 13:47 FR CISFS CASH-FX    312 460 4759 TO 912423632638    P.03/03

## Schedule 3

| Currency Pair | Defined Currency | Defined Quantity | Req Initl Collateral Per Unit-Equivalent | Req Maint Collateral Per Unit-Equivalent | Currency Pair | Defined Currency | Defined Quantity | Req Initl Collateral Per Unit-Equivalen | Req Maint Collateral Per Unit-Equivalent |
|---|---|---|---|---|---|---|---|---|---|
| AUD-CAD | CAD | 100,000 | 1,400 | 1,050 | GBP-AUD | AUD | 100,000 | 1,500 | 1,125 |
| AUD-CHF | AUD | 100,000 | 1,600 | 1,200 | GBP-BEF | BEF | 2,500,000 | 1,400 | 1,050 |
| AUD-DEM | DEM | 125,000 | 1,600 | 1,200 | GBP-CAD | CAD | 100,000 | 1,400 | 1,050 |
| AUD-ESP | ESP | 8,000,000 | 1,200 | 900 | GBP-CHF | CHF | 125,000 | 1,900 | 1,425 |
| AUD-FRF | AUD | 100,000 | 1,600 | 1,200 | GBP-DEM | DEM | 125,000 | 1,500 | 1,125 |
| AUD-JPY | AUD | 100,000 | 1,700 | 1,275 | GBP-ECU | ECU | 62,500 | 1,400 | 1,050 |
| AUD-NZD | NZD | 100,000 | 1,300 | 975 | GBP-ESP | ESP | 8,000,000 | 1,100 | 825 |
| AUD-USD | AUD | 100,000 | 1,317 | 988 | GBP-FIM | FIM | 450,000 | 1,800 | 1,350 |
| CAD-CHF | CAD | 100,000 | 1,500 | 1,125 | GBP-FRF | FRF | 500,000 | 1,700 | 1,275 |
| CAD-FRF | CAD | 100,000 | 1,400 | 1,050 | GBP-ITL | ITL | 100,000,000 | 1,100 | 825 |
| CAD-JPY | CAD | 100,000 | 1,400 | 1,050 | GBP-JPY | GBP | 62,500 | 2,100 | 1,575 |
| CHF-BEF | BEF | 2,500,000 | 1,300 | 975 | GBP-NLG | NLG | 150,000 | 1,500 | 1,125 |
| CHF-DKK | DKK | 500,000 | 1,400 | 1,050 | GBP-NOK | NOK | 500,000 | 1,400 | 1,050 |
| CHF-ESP | ESP | 8,000,000 | 1,000 | 750 | GBP-NZD | NZD | 100,000 | 1,300 | 975 |
| CHF-FIM | FIM | 450,000 | 1,700 | 1,275 | GBP-USD | GBP | 62,500 | 1,890 | 1,418 |
| CHF-FRF | FRF | 500,000 | 1,600 | 1,200 | MYR-SGD | MYR | 200,000 | 1,300 | 975 |
| CHF-ITL | ITL | 100,000,000 | 1,100 | 825 | NLG-BEF | BEF | 2,500,000 | 1,100 | 825 |
| CHF-JPY | CHF | 125,000 | 1,800 | 1,350 | NLG-DKK | NLG | 150,000 | 1,300 | 975 |
| CHF-NLG | NLG | 150,000 | 1,400 | 1,050 | NLG-FRF | NLG | 150,000 | 1,300 | 975 |
| DEM-BEF | BEF | 2,500,000 | 1,100 | 825 | NZD-BEF | NZD | 100,000 | 1,400 | 1,050 |
| DEM-CAD | CAD | 100,000 | 1,400 | 1,050 | NZD-CAD | NZD | 100,000 | 1,300 | 975 |
| DEM-CHF | DEM | 125,000 | 1,300 | 975 | NZD-CHF | NZD | 100,000 | 1,400 | 1,050 |
| DEM-DKK | DEM | 125,000 | 1,200 | 900 | NZD-DEM | NZD | 100,000 | 1,400 | 1,050 |
| DEM-ESP | ESP | 8,000,000 | 900 | 675 | NZD-ESP | NZD | 8,000,000 | 1,100 | 825 |
| DEM-FIM | DEM | 125,000 | 1,300 | 975 | NZD-FIM | NZD | 100,000 | 1,400 | 1,050 |
| DEM-FRF | DEM | 125,000 | 1,200 | 900 | NZD-FRF | NZD | 100,000 | 1,400 | 1,050 |
| DEM-ITL | ITL | 100,000,000 | 1,000 | 750 | NZD-ITL | ITL | 100,000,000 | 1,200 | 900 |
| DEM-JPY | DEM | 125,000 | 2,500 | 1,125 | NZD-JPY | NZD | 100,000 | 1,400 | 1,050 |
| DEM-MYR | DEM | 125,000 | 1,500 | 1,125 | NZD-SEK | SEK | 500,000 | 1,300 | 975 |
| DEM-NLG | DEM | 125,000 | 1,200 | 900 | NZD-USD | NZD | 100,000 | 945 | 709 |
| DEM-NOK | NOK | 500,000 | 1,300 | 975 | SEK-DKK | SEK | 500,000 | 1,200 | 900 |
| DEM-SEK | SEK | 500,000 | 1,200 | 900 | SEK-ESP | ESP | 8,000,000 | 1,000 | 750 |
| DKK-BEF | BEF | 2,500,000 | 1,100 | 825 | SEK-FIM | SEK | 500,000 | 1,200 | 900 |
| ECU-AUD | ECU | 62,500 | 1,500 | 1,125 | SEK-JPY | SEK | 500,000 | 1,300 | 975 |
| ECU-BEF | BEF | 2,500,000 | 1,200 | 900 | SEK-NOK | SEK | 500,000 | 1,200 | 900 |
| ECU-CAD | CAD | 100,000 | 1,400 | 1,050 | USD-BEF | BEF | 2,500,000 | 1,400 | 1,050 |
| ECU-CHF | ECU | 62,500 | 1,300 | 975 | USD-CAD | CAD | 100,000 | 540 | 405 |
| ECU-DEM | ECU | 62,500 | 1,200 | 900 | USD-CHF | CHF | 125,000 | 1,722 | 1,292 |
| ECU-DKK | ECU | 62,500 | 1,200 | 900 | USD-DEM | DEM | 125,000 | 1,485 | 1,114 |
| ECU-ESP | ESP | 8,000,000 | 900 | 675 | USD-DKK | DKK | 500,000 | 1,500 | 1,125 |
| ECU-FIM | ECU | 62,500 | 1,300 | 975 | USD-ESP | ESP | 8,000,000 | 1,100 | 825 |
| ECU-FRF | ECU | 62,500 | 1,200 | 900 | USD-FIM | FIM | 450,000 | 1,700 | 1,275 |
| ECU-ITL | ITL | 100,000,000 | 1,000 | 750 | USD-FRF | FRF | 500,000 | 1,080 | 810 |
| ECU-JPY | ECU | 62,500 | 1,400 | 1,050 | USD-GRD | GRD | 17,500,000 | 1,200 | 900 |
| ECU-NLG | ECU | 62,500 | 1,200 | 900 | USD-HKD | HKD | 600,000 | 1,200 | 900 |
| ECU-NZD | NZD | 100,000 | 1,400 | 1,050 | USD-INR | INR | 125,000,000 | 900 | 675 |
| ECU-SEK | SEK | 500,000 | 1,200 | 900 | USD-ITL | ITL | 100,000,000 | 1,100 | 825 |
| ECU-USD | ECU | 62,500 | 1,400 | 1,050 | USD-JPY | JPY | 12,500,000 | 3,038 | 2,279 |
| ESP-ITL | ESP | 8,000,000 | 1,000 | 750 | USD-MYR | MYR | 200,000 | 1,300 | 975 |
| ESP-JPY | ESP | 8,000,000 | 1,100 | 825 | USD-NLG | NLG | 150,000 | 1,500 | 1,125 |
| FIM-NOK | NOK | 500,000 | 1,300 | 975 | USD-NOK | NOK | 500,000 | 1,400 | 1,050 |
| FRF-BEF | BEF | 2,500,000 | 1,200 | 900 | USD-SAR | SAR | 300,000 | 1,300 | 975 |
| FRF-ESP | ESP | 8,000,000 | 900 | 675 | USD-SEK | SEK | 500,000 | 1,300 | 975 |
| FRF-ITL | ITL | 100,000,000 | 1,000 | 750 | USD-SGD | SGD | 125,000 | 1,400 | 1,050 |
| FRF-JPY | FRF | 500,000 | 1,700 | 1,275 | USD-THB | THB | 2,000,000 | 1,400 | 1,050 |
| FRF-SEK | SEK | 500,000 | 1,200 | 900 | USD-ZAR | ZAR | 500,000 | 675 | 506 |

** TOTAL PAGE.03 **

FROM : TRADING                                        PHONE NO. : 809+363+2638

# New Account Fact Sheet

**Account Name:** Stilton International Holdings LTD
**Mailing Address:** _____

**Attention:** Simon Berkett
**Phone:** 242-363-1182          **Fax:** 242-363-2638

**Method of statement distribution, please circle one:**    Fax    Mailbox    (ECI)

**Duplicate Statements:** _____
**Mailing Address:** _____

**Attention:** _____
**Phone:** _____    **Fax:** _____

**Method of statement distribution, please circle one:**    Fax    Mailbox    ECI

**Date of Incorporation:** 3/8/95          **State/Country of Incorporation:** British Virgin LS

**Trading Phone:** 242-363-1182          **Hours:** 12am → 8pm

**Authorized Traders:** Simon Berkett          **Home Phone:** 242-363-1084
Harry McPhie          **Home Phone:** _____
_____    **Home Phone:** _____
_____    **Home Phone:** _____

Have you ever traded commodities/foreign exchange previously? (If yes, please describe.) Yes_____ No_____

Are you registered with the Commodity Futures Trading Commission as a Futures Commission Merchant, Introducing Broker, Commodity Pool Operator, or Commodity Trading Advisor? (If yes, please give details.) Yes_____ No_____

---

### For Office Use Only

| | | |
|---|---|---|
| Advisory Agreement: | O Received   O Not Applicable | Date: _____ |
| Manager Approval: | _____ | Date: _____ |
| New Accounts Approval: | _____ | Date: _____ |
| Administrative Approval: | _____ | Date: _____ |

15

FROM : TRADING                                      PHONE NO.  : 809+363+2638

---

| Form **W-8** | | **Certificate of Foreign Status** | Give This Form To the Payer, Middleman, Broker or Barter Exchange |
|---|---|---|---|
| (January 1992) Department of the Treasury Internal Revenue Service | | Use to notify payers, middlemen, brokers, and barter exchanges not to withhold or report on payments of interest, broker transactions, or barter exchanges. | |

Name as shown on account (if joint account also give joint owner's name)

**Stiton International Holdings Ltd**

U.S. tax payer identification number (if any)

Address

City, State, and ZIP code (or country)

List account number(s) here (see instructions) ▶

**Part I** Qualifications for Exemption.—Check Applicable Box(es)    **Part II** Notice of Change in Status.—To notify the payer, broker, or barter exchange that you no longer qualify for exemption, check here . . . ▶ ☐

Interest Payments.—If this form was sent to you because you are receiving interest payments and if you are not a U.S. citizen or resident (or if you are a foreign corporation, partnership, estate or trust), check here . . . . . . . . . . . ▶ ☐

Broker Transactions or Barter Exchanges.—If your broker or barter exchange sent you this form and if you are an "exempt foreign person" (see the instructions below for definition), check here . . ▶ ☑

If you check this box, reporting will begin on the account(s) listed.

Certification.—Under the penalties of perjury, I certify that, to the best of my knowledge and belief, I qualify as a foreign person as indicated in the box(es) checked above.

**Please Sign Here** ▶ _(signature)_        Date **10/17/97**

## Instructions

(Section references are to the Internal Revenue Code, unless otherwise stated.)

**Purpose of Form.**—Use this form to tell the payer, middleman, broker or barter exchange that you are a nonresident alien or foreign entity that is not subject to U.S. information return reporting or backup withholding rules. Beginning January 1, 1984, payers of interest, brokers, and barter exchanges may have to withhold 20% of each payment to you if you do not tell the payer or broker their correct taxpayer identification number or if they fail to report the interest on their U.S. Federal income tax return. This is referred to as "backup withholding." (The taxpayer identification number is either a U.S. social security number or Federal employer identification number.) Also, the law required that:

• payments of interest;
• sales of securities, commodities, regulated futures contracts and forward contracts through a broker; and
• exchanges of property or services through a barter exchange

must generally be reported to the Internal Revenue Service.

Nonresident aliens (individuals who are neither citizens nor residents of the United States) and foreign partnerships, corporations, estates and trusts are not generally required to have a U.S. taxpayer identification number, nor are they subject to any backup withholding because they do not furnish such a number to a payer or broker. Also, payments to these account holders are generally not subject to U.S. reporting requirements.

**Interest Payments.**—Interest paid to you is not subject to the new withholding or reporting requirements if you are not a U.S. citizen or resident, or if you are a foreign corporation, partnership, estate or trust. Use this form to notify the payer of your foreign status.

**Broker Transactions and Barter Exchanges.**—You are exempt from U.S. withholding and reporting requirements and may use Form W-8 to notify the broker or barter exchange if you meet the following definition of an "exempt foreign person" for the calendar year in which the transaction occurs:

**Individuals.**—
• You are not a citizen or resident of the United States;
• You have not been present in the United States for 183 days or more during the calendar year, and don't plan to be (or your country has a tax treaty with the United States that exempts your transactions from U.S. taxes); and
• The gains from your transactions with the broker or barter exchange are not effectively connected (related) to any U.S. trade or business you are engaged in or plan to engage in during the year, or your country has a tax treaty with the United States that exempts your transactions from U.S. taxes.

**Nonresident Alien Married to a U.S. Citizen or Resident.**—If you are married to a U.S. citizen or resident and have made an election under section 6013(g) or (h), you are treated as a U.S. resident and may not file Form W-8.

**Corporations, Partnerships, Estates and Trusts.**—

• You are not a U.S. corporation, partnership, estate or trust; and
• The gains from your transactions with the broker or barter exchange are not effectively connected (related) to any U.S. trade or business you are engaged in or plan to engage in during the year, or your country has a tax treaty with the United States that exempts your transactions from U.S. taxes.

**Note: Filing Form W-8** with the payer will not exempt you from the 30% (or lower treaty) flat rate tax on nonbusiness source and foreign corporations.

**Where to File.**—File this certificate with the payer (or broker or barter exchange) in the calendar year in which the payment is made or collected (or for brokerage sales or barter exchanges, the year the transaction took place), unless you have already done this in either of the two preceding calendar years.

**Address.**—

| If you are— | Then show the address of— |
|---|---|
| An individual | Your permanent residence |
| A partnership or corporation | Principal office |
| An estate or trust | Permanent residence or principal office of any fiduciary |

16

# Exhibit 3

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 4

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# Exhibit 5



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

August 9, 2007

Joanne Barak, Esq.
Crossways Consulting Group Inc.
136 Washington Spring Road
Palisades, NY 10964

Re: 50 148 T 00217 07
    Stilton International Holdings Limited
    vs
    CIS Financial Services, Inc.
    Cargill, Incorporated

## NOTICE OF APPOINTMENT

Dear Ms. Barak:

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The ICDR will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the ICDR. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☑ | ☐ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any | ☐ | ☑ |

A Division of the American Arbitration Association



relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding?

6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony?

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned?

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

11. Have you ever sued or been sued by either party or its representative?

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐ I have conducted a check for conflicts and have **nothing to disclose.**

☑ I have conducted a check for conflicts and have **made disclosures on an attached sheet.**

Re: Case #50 148 T 00217 07

Stilton International Holdings Limited
V
CIS Financial Services, Inc.
Cargill, Incorporated

## DISCLOSURES

I have previously served, and am presently serving, on an arbitration panel with Mr. Byrne. The previous case was approximately six or seven years ago. The present case will be concluded by the end of this week. My service with Mr. Byrne in the other matters will not in any way affect my ability to fairly and independently serve on this case.

I have previously served, and am presently serving, on an arbitration panel with William Barrett who was a partner in a law firm that recently merged with Butzel Long. The previous case was approximately fifteen years ago. The present case is expected to conclude within the next two months. My service with Mr. Barrett in the other matters will not in any way affect my ability to fairly and independently serve on this case.

I am presently serving on an arbitration panel in an international case where Butzel Long (Christopher Brady) has recently been substituted as counsel for one of the parties. There have not yet been any hearings in that case. My service in that matter will not in any way affect my ability to fairly and independently serve on this case.

In the early and mid 1980's, I represented a foreign government in connection with contract negotiations and disputes involving the sale and shipment of grain. On one or more occasions, the opposing party was Cargill. I have not had any contact with Cargill since that time, and do not know any person on the parties' witness lists. My prior representation will not in any way affect my ability to fairly and independently serve on this case.

RECEIVED

AUG 1 4 2007

INTERNATIONAL CENTER

## THE ARBITRATOR'S OATH

State of _New York_ }
County of _New York_ }  SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: _Aug 9, 2007_          Signed: _Joanne Barak_

Sworn before me this _9th_ day of _August_  , 2007

ABBIDALE SPENCER
Notary Public - State of New York
NO. 01SP6135893
Qualified in Kings County
My Commission Expires 10/23/2009

_Abbidale Spencer_
_8/9/2007_



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

August 9, 2007

Joanne Barak, Esq.
Crossways Consulting Group Inc.
136 Washington Spring Road
Palisades, NY 10964

Re: 50 148 T 00217 07
    Stilton International Holdings Limited
    vs
    CIS Financial Services, Inc.
    Cargill, Incorporated

## NOTICE OF COMPENSATION ARRANGEMENTS

Dear Ms. Barak,

You have been invited to serve as an arbitrator in the above-referenced matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your resume states otherwise, you are willing to comply with the ICDR's *Billing Guidelines for International, Commercial, Construction, and Employment Neutrals*. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your resume, you must notify the Association prior to accepting your appointment so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

You will be compensated at the following rate, as indicated on your AAA resume:

| | | |
|---|---|---|
| Hearing Time: | $250.00 | per hour |
| Study Time: | $250.00 | per hour |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your case manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

## Deposits and Payment

Payment for your compensation is the obligation of the Parties and it is understood that the ICDR has no liability, direct or indirect, for such payment. During the course of the proceeding your case manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the Parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, your case manager will advise you of the total amount on deposit. Should the Parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your case manager can assist you in issuing an appropriate order to the Parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform your case manager prior to exhausting the current deposit. Your case manager will then make arrangements with the Parties for additional deposits per your instructions.

In order to receive payment, please submit invoices promptly. Your invoices should be submitted in a format that is presentable to the Parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the ICDR will release payment from the amounts deposited by the Parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one Party's deposit to cover another Party's obligation without written permission to do so.

In the event the Award is delivered prior to payment by the Parties of the agreed upon compensation, the ICDR is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The ICDR may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the ICDR be liable for any failure to collect any or all the monies due. The ICDR is authorized to subtract a reasonable amount for collection and attorney's fees.

Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the ICDR's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your case manager.

---

### ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may view this information by logging in to the AAA's Neutrals eCenter. You may also contact your case manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _Terrence Burak_          Date: _Aug 9, 2007_



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

August 9, 2007

John F. Byrne, Esq.
240 Windsor Place
Brooklyn, NY 11215

Re: 50 148 T 00217 07
    Stilton International Holdings Limited
    vs
    CIS Financial Services, Inc.
    Cargill, Incorporated

## NOTICE OF APPOINTMENT

Dear Mr. Byrne:

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The ICDR will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the ICDR. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|     |     | Yes | No |
|-----|-----|-----|-----|
| 1. | Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. | Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. | Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☒ |
| 4. | Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |
| 5. | Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☒ |

2/6

So 148 T 00217 07

Byrne

|  | Yes | No |
|---|---|---|
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☒ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☒ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☒ |
| 9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? | ☒ | ☐ |
| 10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? | ☐ | ☒ |
| 11. Have you ever sued or been sued by either party or its representative? | ☐ | ☒ |
| 12. Do you or your spouse own stock in any of the companies involved in this arbitration? | ☐ | ☒ |
| 13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? | ☒ | ☐ |
| 14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? | ☐ | ☒ |

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐ I have conducted a check for conflicts and have **nothing to disclose.**

☒ I have conducted a check for conflicts and have **made disclosures on an attached sheet.**

3/6

# JOHN F. BYRNE, ESQ.

In the Matter of the Arbitration Between:
Case No. 50 148 T 00217 07
Stilton International Holdings Limited
          -and-
CIS Financial Services, Inc. and
      Cargill, Incorporated

### Disclosure Statement

With respect to the questions on the accompanying Notice of Appointment receiving a "Yes" answer:

9.     The law firm of Seward & Kissel LLP "appeared" before an LCC Panel I chaired as a party representative in a matter that was stayed, then settled in March 2007, before a Preliminary hearing was convened.

13.    Over the past five (5) or so years, Peter Collins, Esq. and I have served together on LCC and Commercial Panels on at least three (3) or four (4) occasions.
      Joanne Barak, Esq. and I are about to complete our service together on an LCC Panel in a matter that, after hearings in June 2007, will result in a unanimous Award within the next several days. Also, Ms. Barak and I are awaiting confirmation to serve on another LCC Panel together in a matter wherein no proceedings have been scheduled at this time.

I make the foregoing disclosures as a matter of completeness only, none of which would in any way impair my impartiality or ability to serve as the Neutral Chair in the above-referenced arbitration.

Dated: August 10, 2007

                             John F. Byrne, Esq.

4|6

50 148 T 00217 07                                                    Byrne

## THE ARBITRATOR'S OATH

State of NEW YORK }
County of KINGS }    SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: 8/10/07          Signed: _____

Sworn before me this 10th day of August , 2007

Marilyn N. Goldman
MARILYN N. GOLDMAN
Notary Public, State of New York
No. 31-6571865
Qualified in New York County
Commission Expires June 30, 2010

5/6



International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

August 9, 2007

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

John F. Byrne, Esq.
240 Windsor Place
Brooklyn, NY 11215

Re: 50 148 T 00217 07
    Stilton International Holdings Limited
    vs
    CIS Financial Services, Inc.
    and
    Cargill, Incorporated

### NOTICE OF COMPENSATION ARRANGEMENTS

Dear Mr. Byrne,

You have been invited to serve as an arbitrator in the above-referenced matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your resume states otherwise, you are willing to comply with the ICDR's *Billing Guidelines for International, Commercial, Construction, and Employment Neutrals.* If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your resume, you must notify the Association <u>prior to accepting your appointment</u> so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

You will be compensated at the following rate, as indicated on your AAA resume:

| | | |
|---|---|---|
| Hearing Time: | $300.00 | per hour |
| Study Time: | $300.00 | per hour |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your case manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

## Deposits and Payment

Payment for your compensation is the obligation of the Parties and it is understood that the ICDR has no liability, direct or indirect, for such payment. During the course of the proceeding your case manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the Parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, your case manager will advise you of the total amount on deposit. Should the Parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your case manager can assist you in issuing an appropriate order to the Parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform your case manager prior to exhausting the current deposit. Your case manager will then make arrangements with the Parties for additional deposits per your instructions.

In order to receive payment, please submit invoices promptly. Your invoices should be submitted in a format that is presentable to the Parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the ICDR will release payment from the amounts deposited by the Parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one Party's deposit to cover another Party's obligation without written permission to do so.

In the event the Award is delivered prior to payment by the Parties of the agreed upon compensation, the ICDR is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The ICDR may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the ICDR be liable for any failure to collect any or all the monies due. The ICDR is authorized to subtract a reasonable amount for collection and attorney's fees.

## Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the ICDR's Roster of Neutrals. Should this occur, you may be required to

50   148 T   00217  07                                                Byrne

forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your case manager.

---

### ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record.  If you are unsure of your current payment preference, you may view this information by logging in to the AAA's Neutrals eCenter.  You may also contact your case manager or the AAA Department of Neutrals' Services.  Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS.  Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

 I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _____      Date: __8/10/07_____

6/6

HUG-15-07 WED 03:54 PM Case 1:08-cv-00361-JJF    Document 17-2    FAX NO Filed 07/07/2008    Page 78 of 86    P. 07
Page 1
(8/13/2007) Peter COLLINSP - 2007.08.09, INOA for Mr. Collins, 217.07.doc



International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

August 9, 2007

Peter M. Collins, Esq.
Butzel Long
551 Fifth Avenue, 27th Floor
New York, NY 10176

Re: 50 148 T 00217 07
     Stilton International Holdings Limited
     vs
     CIS Financial Services, Inc.
     Cargill, Incorporated

## NOTICE OF APPOINTMENT

Dear Mr. Collins:

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The ICDR will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the ICDR. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any | ☐ | ☑ |

*A Division of the American Arbitration Association*

relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding?

6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony?

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned?

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

11. Have you ever sued or been sued by either party or its representative?

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

*(see letter dated Augu 14, 2007)*

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☐ I have conducted a check for conflicts and have nothing to disclose.

☑ I have conducted a check for conflicts and have made disclosures on an attached sheet.

AUG-15-07 WED 03:02 PM FAX NO. P. 09
Case 1:08-cv-00361-JJF    Document 17-2    Filed 07/07/2008    Page 80 of 86
(8/13/2007) Peter COLLINSP - 2007.08.09, INOA for Mr. Collins, 217.07.doc    Page 3

## THE ARBITRATOR'S OATH

State of New York
County of New York } SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: August 14, 2007    Signed: _____

Sworn before me this 14th day of August, 2007

DEBORAH A. REAGAN
Notary Public, State of New York
No. 01RE6095376
Qualified in Westchester County
Commission Expires July 7, 2011

# BUTZEL LONG
## ATTORNEYS AND COUNSELORS

27th Floor   551 Fifth Avenue
New York, New York  10176
T: 212 818 1110   F: 212 818 0494
butzel.com

August 14, 2007

Stilton International Holdings Limited
v.
CIS FinancialServices, Inc.
and Cargill, Incorporated

Guillaume Lemenez de Kerdelleau, Esq.
International Case Manager
International Centre for Dispute Resolution
American Arbitration Association
1633 Broadway, 10th Floor
New York, NY 10019

Dear Mr. Lemenez de Kerdelleau:

In connection with the above-entitled proceeding, I wish to make disclosure of the following fact, which would have absolutely no bearing on my impartiality or affect my evaluation of the evidence in the case.

I understand that one of the two other arbitrators in this case is John Byrne, Esq. Over the last ten years Mr. Byrne and I have served together on more than half a dozen arbitration panels. I have also attended several continuing education seminars for arbitrators in which Mr. Byrne was presenter.

Very truly yours,

Peter M. Collins

Detroit   Bloomfield Hills   Ann Arbor   Lansing   Holland   Boca Raton   Palm Beach   Washington D.C.   New York
Alliance Offices   Beijing   Shanghai   Member Lex Mundi   www.butzel.com

 International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

August 9, 2007

Peter M. Collins, Esq.
Butzel Long
551 Fifth Avenue, 27th Floor
New York, NY 10176

RECEIVED

AUG 1 6 2007

INTERNATIONAL CENTER

Re: 50 148 T 00217 07
      Stilton International Holdings Limited
      vs
      CIS Financial Services, Inc.
      and
      Cargill, Incorporated

## Notice of Compensation Arrangements

Dear Mr. Collins,

You have been invited to serve as an arbitrator in the above-referenced matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your resume states otherwise, you are willing to comply with the ICDR's *Billing Guidelines for International, Commercial, Construction, and Employment Neutrals.* If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your resume, you must notify the Association prior to accepting your appointment so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

You will be compensated at the following rate, as indicated on your AAA resume:

|  |  |  |
|---|---|---|
| Hearing Time: | $350.00 | per hour |
| Study Time: | $350.00 | per hour |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your case manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

### Deposits and Payment

Payment for your compensation is the obligation of the Parties and it is understood that the ICDR has no liability, direct or indirect, for such payment. During the course of the proceeding your case manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the Parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, your case manager will advise you of the total amount on deposit. Should the Parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your case manager can assist you in issuing an appropriate order to the Parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform your case manager *prior to exhausting the current deposit*. Your case manager will then make arrangements with the Parties for additional deposits per your instructions.

In order to receive payment, please submit invoices promptly. Your invoices should be submitted in a format that is presentable to the Parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the ICDR will release payment from the amounts deposited by the Parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one Party's deposit to cover another Party's obligation without written permission to do so.

In the event the Award is delivered prior to payment by the Parties of the agreed upon compensation, the ICDR is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The ICDR may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the ICDR be liable for any failure to collect any or all the monies due. The ICDR is authorized to subtract a reasonable amount for collection and attorney's fees.

Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the ICDR's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your case manager.

## ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may view this information by logging in to the AAA's Neutrals eCenter. You may also contact your case manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _Peter Collins_____    Date: _August 15, 2007_

HUG-15-07 WED 03:50 PM          FAX NO.
Case 1:08-cv-00361-JJF     Document 17-2     Filed 07/07/2008     Page 85 of 86     P. 05
(8/15/2007) Peter COLLINSP - 2007.08.09, INOCA1 for Mr. Collins, 217.07.doc
Page 4

### Billing Guidelines for ICDR Arbitrators

One of the objectives of arbitration is to provide disputants with an affordable dispute resolution procedure. Parties view the cost of an arbitration to include both the administrative fees of the International Centre for Dispute Resolution (ICDR) and your fees and expenses. Nobody should be precluded by cost from using the arbitration process, which we all support as a valuable resolution technique.

Arbitrators should keep in mind the need for simplicity in their fee structure, but rates are at the complete discretion of the arbitrator in most of our case types, as long as they are included in the resume.

The following guidelines have been developed, after careful consideration of post-Award feedback from parties, to assist in the presentation of the fees included in your resumes and billing statements:

### Per Diem/Hourly Fees

- Your fees should be all inclusive. Per diem fees are expected to include a full day's hearing time (7 hours).
- If you intend to be compensated for *non-hearing* time, that expectation should be detailed on your panel biography.
- With either per diem or hourly fees, no further billing should be submitted for time spent (a) discussing the case with AAA staff; (b) writing, telephoning, faxing, or Emailing case management staff. If you intend to charge for any of the fees identified in (a) or (b), you should include that information on your ICDR panel biography.
- Unless otherwise stated on your panel biography, no billing should be made for time spent by personal administrative assistants.

### Cancellation Fees

- Most ICDR arbitrators do not charge a cancellation fee for postponements of hearing dates or cancellation because of settlement. Cancellation fees are not favored. However, if you require a cancellation fee, it should be listed as a separate fee on your panel biography. The fee should be for unusual circumstances, and it should require no more than 72 hours notice. Notice of postponements or cancellations may be received from a case manager by telephone or by e-mail. A statement that you were unable to reschedule or make professional use of the billed time should accompany all cancellation fees.

AUG-15-07 WED 03:50 PM       FAX NO.       P. 06
Case 1:08-cv-00361-JJF    Document 17-2    Filed 07/07/2008    Page 86 of 86
(8/15/2007) Peter COLLINSP - 2007.08.09, INOCA1 for Mr. Collins, 217.07.doc       Page 5

### Expenses

- In many cases, no additional expenses will be incurred, as hearings will be held locally. If you serve as an arbitrator on a case outside your locale, clarify before the hearing that reasonable, necessary air travel, hotel room accommodations and meals will be reimbursed.
- Costs incurred for stamps, local telephone calls, local travel, copying of materials or other incidental expenses are not typically reimbursed. Expectations to the contrary should be detailed on your panel biography.
- Entertainment costs and personal expenses are not reimbursable.

### Post-Award Activity

- If a request or remand by the court to modify an award is necessitated by an error on your part, you should dispose of the request or remand without additional compensation.
- If a request or remand for modification does not require a great deal of effort, such as the omission of a word in a company name, you should dispose of the request or remand without additional compensation.
- If the case in which a request or remand for modification is one in which you served for a flat fee, we recommend that you not charge additional sums to dispose of such requests. On flat fee cases it may be difficult to collect additional compensation. Every effort will be made but this should not prevent you from dealing with these requests.

If a request or remand for modification is not the result of your error or requires significant effort on your part, then it is appropriate to be compensated for such activity. ICDR will attempt to collect such compensation in advance. You should dispose of the request or remand expeditiously, even if such compensation has not been deposited in advance.

### Billing Language

- The language used in describing fees and expenses should be clear and detailed, not summarized, as for example, "for services rendered". It should include the amount of time spent and a description of the work performed.
- All billing should be completed prior to the issuance of the award. Invoices may not be accepted if submitted after a matter is closed.

Every effort will be made to collect arbitrator compensation before the hearing date. If the compensation has not been deposited, you will be given the option not to go forward with the hearing. Periodic invoices, as opposed to a single, final invoice at the conclusion of the case, are encouraged. Occasional communications with the case manager regarding compensation are also encouraged.

In keeping with our goal of providing parties with an affordable dispute resolution process, the ICDR routinely reviews arbitrator billings.

Thank you.