## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STILTON INTERNATIONAL HOLDINGS LIMITED, | ) ) ) | |
| Petitioner, | ) ) | C.A. No. 08-361 (JJF) |
| v. | ) ) ) | |
| CIS FINANCIAL SERVICES, INC. and CARGILL, INCORPORATED, | ) ) ) | **PUBLIC VERSION** **Docket No. 29** |
| Respondents. | ) ) | |

## RESPONDENTS CARGILL, INCORPORATED AND CIS FINANCIAL SERVICES, INC.'S REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION TO VACATE OR ALTERNATIVELY TO MODIFY ARBITRATION AWARD

LANDIS RATH & COBB LLP
Daniel B. Rath, Esquire (No. 3022)
Rebecca L. Butcher, Esquire (No. 3816)
919 Market Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  rath@lrclaw.com
        butcher@lrclaw.com

OF COUNSEL:
FAEGRE & BENSON LLP
Michael B. Fisco, Esquire
Will Stute, Esquire
Michael M. Krauss, Esquire
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612)766-7000

*Attorneys for Respondents CIS Financial Services, Inc. and Cargill, Incorporated*

DATE:  August 29, 2008

623.002-21816.doc

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.     The Award Should Be Vacated Because The Panel Exceeded Its Powers By Re-Writing the Account Agreement ................................................................... 2

    II.    The Award Is Not Final And Definite And If Not Vacated, Must Be Modified ........... 7

        A.    The Award is vague, the amount of the award is shifting, and it does not set the rights and obligations of the parties ................................................................. 7

        B.    The Award improperly gives Stilton the ability to undercut Cargill's right to credit ................................................................................................................ 10

        C.    The Award provides Stilton with the opportunity to achieve a double recovery and the fact that legal remedies may be available to Cargill if that happens does not fix the Award ........................................................................................ 12

CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*ACandS, Inc. v. Travelers Cas. & Surety Co.*,
    435 F.3d 252 (3d Cir. 2006) ..................................................................................2

*Brentwood Med. Assocs. v. United Mine Workers of Am.*,
    396 F.3d 237 (3d Cir. 2005) ..................................................................................6

*Cambridge Capital, LLC v. Rossi*,
    331 B.R. 47 (Bkrtcy. E.D.N.Y. 2005) ..................................................................12

*Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*,
    257 F. Supp. 2d 751 (S.D.N.Y. 2003) ..................................................................11

*Collins & Aikman Floor Coverings Corp. v. Forehlich*,
    736 F. Supp. 480 (S.D.N.Y. 1990) .........................................................................5

*DeKwiatowski v. Bear, Stearns & Co.*,
    306 F.3d 1293 (2d Cir. 2002) .................................................................................3

*Dighello v. Busconi*,
    673 F. Supp. 85 (D. Conn. 1987), *aff'd,* 849 F.2d. 1467 (2d Cir. 1988)................12

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998) ...................................................................................3

*Metromedia Energy Servs., Inc. v. Ensearch Energy Servs. Inc.*,
    409 F.3d 547 (3d Cir. 2005) ...................................................................................3

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991) ...................................................................................4

*Sherrock Bros., Inc. v. DaimlerChrysler Motors Co.*,
    465 F. Supp. 2d 384 (M.D. Pa. 2006) ....................................................................2

*Southco, Inc. v. Reell Precision Mfg. Corp.*,
    __ F. Supp. 2d __, 2008 WL 2221891 (E.D. Pa. May 27, 2008) .............................2

*Yusuf Ahmed & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) .....................................................................................3

## STATE CASES

*Professional Staff Congress-CUNY v. New York State Public Employment Relations Bd.*,
    7 N.Y.3d 458, 857 N.E.2d 1108 (2006) ..................................................................5

*State of New York v. Seventh Regiment Fund, Inc.*,
    98 N.Y.2d 249, 774 N.E.2d 702 (2002) ...................................................................................4

**FEDERAL STATUTES**

9 U.S.C. § 207.......................................................................................................................3

**OTHER AUTHORITIES**

American Arbitration Association, Commercial Arbitration Rules, R-42; R-43 ............................8

http://www.investopedia.com/terms/c/credit.asp ............................................................................9

## PRELIMINARY STATEMENT

The goal of arbitration under the FAA is primarily twofold: (1) to enforce the agreement as bargained between the parties, and (2) to resolve the parties' dispute in a full and final manner that eliminates the need for litigation. The Award here should be vacated, or alternatively modified, because it fails both objectives. First, in awarding contract damages against Cargill for Refco's failure to return customer funds on demand, the Panel interpolated into the Account Agreement a contractual duty and remedy that do not exist. Stilton points to everywhere *but* the plain text of the parties' agreement as the source of such an obligation, but vacation is warranted because the Panel's written opinion makes clear that it exceeded its authority by basing the Award on a term found nowhere in the contract itself.

Second, the remedy as fashioned by the Panel is unclear, unworkable, and unsupportable under the FAA. Rather than resolve the parties' dispute fully and finally, it opens a Pandora's box of issues for litigation. Among them: What are the parties' respective payment obligations under the Award? And: Can Stilton's principal sell Stilton's bankruptcy claim to another entity he controls, without engaging in a fraudulent transfer at Cargill's expense? Beyond that, the Award ignores Stilton's duty to mitigate damages, and instead encourages Stilton to resolve its preference action by intentionally increasing its purported contract damages. In short, if the Award is not vacated outright, is must be modified and corrected to comply with both the FAA and basic fairness under the common law.

1

## ARGUMENT

**I.    The Award Should Be Vacated Because The Panel Exceeded Its Powers By Re-Writing the Account Agreement.**

"An arbitration award will be enforced if its form can be rationally derived from either the agreement between the parties or the parties' submissions to the arbitrators and terms of the arbitral award are not completely irrational." *ACandS, Inc. v. Travelers Cas. & Surety Co.*, 435 F.3d 252, 258 (3d Cir. 2006) (Alito, J.).  But where the terms of the award are completely irrational – such that they do not draw their essence from the agreement itself – vacation is warranted. *Southco, Inc. v. Reell Precision Mfg. Corp.*, __ F. Supp. 2d __, 2008 WL 2221891, at *5 (E.D. Pa. May 27, 2008); *Sherrock Bros., Inc. v. DaimlerChrysler Motors Co.*, 465 F. Supp. 2d 384, 392-93 (M.D. Pa. 2006).

That is the case here.  Stilton argues that "assignment does not discharge the assignor of its obligations to its obligee *under the contract*."  (Opp. at 15 (emphasis added).)[1]  Stilton's problem remains that the Panel awarded $30.6 million in damages for breach of obligations that did not arise *under the contract*.  The Award assumes that Refco had a contractual duty to return Stilton's funds on demand no matter the circumstances.  But while such a duty and ensuing damages may be imposed against Refco in tort, they appear nowhere in the Account Agreement – and thus cannot give rise to a contractual obligation binding on Cargill.  Because it is obvious from the written opinion that the Panel exceeded its authority here in concluding otherwise, the

---

[1] "Opp." refers to Stilton's July 21, 2008, brief in opposition to Cargill's cross-motion to vacate or alternatively to modify the arbitration award, and "Br." refers to Cargill's July 3, 2008, brief in support of its cross-motion.  Unless stated otherwise, capitalized and abbreviated terms retain the same meaning as in Cargill's July 3, 2008, brief.

Award should be vacated under section 10(a) (4) of the FAA. *See Metromedia Energy Servs., Inc. v. Ensearch Energy Servs. Inc.*, 409 F.3d 547, 580 (3d Cir. 2005).[2]

The Panel found that CISFS and then Refco "acted as [Stilton's] broker" pursuant to the Account Agreement, and that Refco breached the Agreement by: (1) imposing a moratorium on trading and withdrawals; (2) liquidating Stilton's account; and (3) refusing to return monies in that account to Stilton. (Award at 1, 3.) But as Stilton concedes and the Panel recognized, CISFS (and then Refco) contractually agreed only to act as Stilton's broker – and not as a guarantor that all client funds will be available for return on demand for an indefinite period of time. Indeed, under the Panel's writing of the Account Agreement, Cargill would be a guarantor of the return of funds even if the bankruptcy had occurred five or ten years after assignment of the Account Agreement.

Contrary to Stilton's characterization, however, the contractual obligation "to act as broker" is not "undefined and ambiguous." (Opp. at 12.) Nor is it illusory. New York courts have consistently held that a broker in a non-discretionary account such as Stilton's has only "the duty to execute requested trades." *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) (rejecting broad fiduciary duty in ordinary broker/customer relationship under New York law); *see also DeKwiatowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1306 (2d Cir. 2002) (observing that there is "no authority for the view that, in the ordinary

---

[2] Stilton suggests that 9 U.S.C. § 207 and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("Convention") contain the only grounds for vacation or modification. (Opp. at 32.) Stilton is wrong. Whether the Convention applies or not, the FAA applies to Cargill's cross-motion because the Award is a non-domestic award rendered in the United States. *Yusuf Ahmed & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 20-23 (2d Cir. 1997) (applying FAA to motion to vacate nondomestic arbitration award rendered in United States). "Indeed, many commentators and foreign courts have concluded that an action to set aside an award can be brought *only* under the domestic law of the arbitral forum, and can never be made under the Convention." *Id.* The FAA thus governs the dueling motions here.

3

case, a broker may be held to an open-ended duty of reasonable care, to a nondiscretionary client, that would encompass anything more than limited transaction-by-transaction duties."); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991) (holding that broker had no fiduciary duty to customer "other than to execute the trades requested because the accounts were non-discretionary").

Stilton cited no cases either to the Panel or this Court holding that the contractual duty to act as broker includes an obligation to return all client funds on demand — effectively guaranteeing against adverse market conditions, including bankruptcy of the broker. Stilton instead relies on testimony and argument during the hearing that **REDACTED**

**REDACTED**

(Opp. at 12, 13 (quoting Hearing Transcript).)                    **REDACTED**

**REDACTED**          Instead, the duty not to improperly seize or withhold another's property arises not in contract, but in tort. For example, a party may be liable for the tort of conversion when it engages in "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *State of New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259, 774 N.E.2d 702, 710 (2002). Stilton could — and did — bring a variety of tort claims against Cargill. It was in that context that witnesses and counsel discussed **REDACTED**          Stilton points to no hearing testimony or argument stating that Stilton's right to pull its money or Refco's duty to return funds arose *under the contract*, thereby yielding contract damages for which Cargill remains responsible. And the Panel rightly rejected all of Stilton's tort claims against Cargill.

What remains is the plain and limited text of the Account Agreement itself. Nowhere does the Account Agreement impose on Cargill the obligation to return customer funds within

4

any given length of time, much less on demand. Nor does the Account Agreement include a guarantee that customer funds will be available for return regardless of market conditions. Nothing prevented the parties from imposing such contractual obligations, with ensuing contract damages, on Cargill. To the contrary, the Account Agreement cautions that all transactions are unregulated and the broker is not supervised or subject to oversight. (Account Agreement ¶1.)

Beyond that, the contract specifies various Events of Default that trigger remedies flowing from Stilton to Cargill, but does not specify any similar Event of Default by Cargill. (*Id.* ¶8.) Particularly where the Account Agreement demonstrates that the parties knew how to impose specific obligations with potential contract remedies, the absence of any specific duty imposed on Cargill beyond "act[ing] as a broker" is dispositive. *See Professional Staff Congress-CUNY v. New York State Public Employment Relations Bd.*, 7 N.Y.3d 458, 469, 857 N.E.2d 1108, 1113 (2006) (holding that contractual provision remained in effect where parties' inclusion of sunset clauses prior agreements demonstrated that they knew how to terminate provisions when they wanted to do so).

The court's decision in *Collins & Aikman Floor Coverings Corp. v. Forehlich*, 736 F. Supp. 480 (S.D.N.Y. 1990), thus remains instructive. Although, as Stilton notes (Opp. at 20 n.9), the court ultimately denied vacatur, it did so only because it identified a separate theory of relief under New York law that could support the award. *Collins*, 736 F. Supp. at 485-87. In that case, the arbitrator awarded a fired salesman commissions made on sales after his termination date, rather than limiting the award to sales pending at the time of termination. The court held that the arbitrator had exceeded her authority to the extent that she based the award on a provision that she had inserted into the agreement. *Id.* at 484. Similarly, the sole basis for the Award here is the Panel's insertion into the Account Agreement a contractual duty by Cargill to return

customer funds on demand, no matter the circumstances. The Account Agreement, of course, contains no such language, and the Panel therefore exceeded its authority by basing its Award on a non-existent contractual provision. *See also Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241-42 (3d Cir. 2005) (explaining that vacation is appropriate where award is based solely on purported text found nowhere in the parties' contract).[3]

Notably, Stilton cannot dispute that the Award was based on Cargill's purported contractual obligation to return all funds in Stilton's account, and not on any other purported breach. The Award values Stilton's total damages at $54 million, citing its accepted proof of claim in the Refco bankruptcy. (Award at 2, 3.) And according to Stilton's proof of claim, $54 million represents the cash balance on liquidation of Stilton's open foreign exchange positions with Refco. (Paulson Aff., Ex. 20.) So although the Panel cited Refco's failure to execute trades as of October 13, 2005, as a breach of the Agreement, it did not base the damages awarded to Stilton on that alleged breach.

While the Panel had the right to *interpret* the Account Agreement, it also had the duty not to *interpolate* new language into it. But that is what the Panel did when it awarded $30.6 million in contract damages based on a duty that cannot be found in the four corners of the parties' agreement. Because the Panel's conduct in exceeding its authority is obvious from its own written opinion, the Award should be vacated under the FAA.

---

[3] Stilton tries to distinguish *Brentwood* by noting that there "the arbitrator did not merely interpret the agreement, but actually interpolated nonexistent language into it." (Opp. at 21 (citing *Brentwood*, 396 F.3d at 243).) Specifically, the arbitrator cited text that appeared nowhere in the CBA in upholding the employer's right to employer's right to "bump" the least senior employee. *Brentwood*, 396 F.3d at 240. Likewise here, the Panel based its award of contract damages on language that appears nowhere in the Account Agreement – the nonexistent contractual obligation to return all customer funds on demand, regardless of the market conditions.

## II.    The Award Is Not Final And Definite And If Not Vacated, Must Be Modified.

Cargill presented two principal arguments in support of its alternative motion to modify the Award in its Memorandum.  First, the Award should be modified because it is not final and definite on its face.  Second, the Award should be modified because it provides Stilton with the opportunity to manipulate the bankruptcy process and the resolution of its preference claim in ways that could result in an impermissible double recovery for Stilton.

The thrust of Stilton's response is that the Award *does* set forth the obligations and rights of the parties fully and finally.  But Stilton relies exclusively on its own unsupportable interpretation of the Award, rather than the language of the Award itself.  Indeed, Stilton's arguments demonstrate that the Award is, at a minimum, impermissibly vague, such that additional litigation will be required to determine the parties' rights and obligations.  This is exactly what the FAA seeks to avoid, and it is exactly why the Court should, at a minimum, modify or clarify the Award.

### A.    The Award is vague, the amount of the award is shifting, and it does not set the rights and obligations of the parties.

Stilton argues that the Award is final and definite, setting forth its interpretation of the language of the Award:

> Further, the Final Award 'finalize[d] the obligations of the parties': it awarded Stilton $30.6 million immediately, and imposed on Stilton a future obligation to pay Cargill for amounts it receives in respect of its $54 million proof of claim in the Refco bankruptcy in excess of $23.6 million.

(Opp. at 25.)  But the Award says something very different:

> Respondents shall pay to Claimant the sum of THIRTY MILLION, SIX HUNDRED THOUSAND DOLLARS and NO CENTS ($30,600,000.00), plus interest at the legal rate from the date of this Award until said sum is paid in full; provided, however, that Respondents shall be given credit for any monies paid to Claimant on account of its $54 million claim in bankruptcy court in excess of $23.4 million.

7

(Award at 4.) The Award *does not say* that "Stilton is awarded $30.6 million immediately." [4] The Panel could have used those words, or the equivalent, but did not. The Award is silent on the timing of payment by Cargill. Accordingly, it does not require Cargill to make immediate payment to Stilton. Instead, the Award affixes the obligation upon Cargill to pay Stilton interest on the un-received portion of the Award until Stilton receives the full amount. So, on its face, the Award gives Cargill the option *not to pay immediately*, and in such case the Award makes Cargill liable for interest on the un-recovered portion of the Award until Stilton is "made whole" by some combination of distributions in the Refco bankruptcy and payments from Cargill.

Stilton goes on to claim that the Award "imposed on Stilton a future obligation to pay Cargill for amounts it receives in respect of its $54 million proof of claim in the Refco bankruptcy in excess of $23.6 million." (Opp. at 25.) Here again, the Award says no such thing. It actually says: "Respondents shall be given *credit* for any monies paid to Claimant on account of its $54 million claim in bankruptcy court in excess of $23.4 million." (Award at 4 (emphasis added).) The Award does not define "credit", nor does it give any support for Stilton's interpretation of "credit." In a footnote, Stilton explains the theory behind its interpretation of credit: "Under the terms of the Final Award, Stilton is obligated to credit – pay to – Cargill amounts it *receives* in excess of $23.4 million." (Opp. at 12, n.12.) Stilton's theory that *credit* equals *pay to*, however, is at odds with the plain meaning of the Award's language.

In the commercial and financial arenas, *credit* is commonly defined in two ways:

> 1. A contractual agreement in which a borrower receives something of value now and agrees to repay the lender at some date in the future, generally with interest. The term also refers to the borrowing capacity of an individual or company.

---

[4] AAA rules do not require payment in a certain period of time. American Arbitration Association, Commercial Arbitration Rules, R-42; R-43.

2. An accounting entry that either decreases assets or increases liabilities and equity on the company's balance sheet. On the company's income statement, a debit will reduce net income, while a credit will increase net income.[5]

The Award is not a contractual agreement, and Cargill is not a borrower. Accordingly, the second definition above comports with the context of the Award, and is the logical interpretation of the language of the Award. Under this definition, "credit" is an accounting exercise, under which the amount Cargill owes will be reduced by Stilton's recovery in bankruptcy.[6]

The language of the Award simply does not support Stilton's self serving and rigid interpretation. Instead, the Award fixes a total amount that Stilton is entitled to receive, $30.6 million, from some combination of bankruptcy distributions, and if necessary, payments by Cargill, plus interest until it is put in that position. The Award does not require payment of $30.6 million to take place immediately. Cargill has the option to defer payment in anticipation of additional distributions, and presumably the resolution of Stilton's preference claim, so that the distributions to which it is currently entitled may be paid to Stilton. But in exchange, Cargill is liable for interest on the un-received portion of Stilton's $30.6 million bankruptcy claim.

Stilton's reading of the Award, while flawed and incorrect, supports Cargill's argument that the Award is ambiguous on its face and requires modification, clarification, or remand to the American Arbitration Association in order for it to comply with the FAA. The Court can, and

---

[5] http://www.investopedia.com/terms/c/credit.asp

[6] The absurdity of Stilton's reading of the Award is further demonstrated by assuming the Refco trustee announces tomorrow that it has approved payments to all unsecured F/X claims, including Stilton, in the amount of 100% of claims. Under Stilton's interpretation of the Award, Cargill must *still* pay to Stilton $30.6 million plus interest, even though Stilton would have already been made whole. Then, Stilton would have an obligation to pay back (Stilton's definition of "credit") $30.6 million to Cargill, but not return the interest.

should, modify the Award to clarify it in the matter suggested by Cargill in its Initial Memo, or as set forth below, and the Court need not touch the merits of the Award in order to do so.

**B.      The Award improperly gives Stilton the ability to undercut Cargill's right to credit.**

As Cargill has explained, the Award wrongly ties the calculatin of Cargill's credit to "any monies paid to Claimant on account of its $54 million claim in bankruptcy court in excess of $23.4 million." (*See* Br. at 14.) Stilton can improperly reduce the credit owed to Cargill by resolving the preference claim in exchange for a reduced pay-out on its bankruptcy claim – without any incentive to mitigate its purported contract damages.

Stilton does not deny that it withdrew $20 million from its Refco account or that these funds are the subject of the preference action. Because Stilton is currently entitled to a distribution of 44.57% of its claim, it is theoretically entitled to avoid paying 55.43% of the $20 million subject to the preference action to the Refco trustee. Under this scenario, Stilton would owe $11,086,000 (54.43% of $20 million) to the Refco bankruptcy estate.

Stilton could attempt to resolve the preference action by offering to reduce the amount of Stilton's bankruptcy claim by $11.086 million, in exchange for being allowed to keep the entire $20 million subject to the preference action already in Stilton's possession. If the Refco trustee agreed, Stilton would slash by almost half the amount to which it is entitled as a result of the bankruptcy claim, from $24,067,800 to $12,981,800. In turn, this would increase Cargill's liability by $11.086 million because it would decrease by $11.086 million the amount "paid to Claimant on account of its $54 million claim in bankruptcy court in excess of $23.4 million." And because the amount paid to Stilton on account of its claim could never exceed 100%, this would be true even if the Refco trustee eventually distributed 100% of claims to Stilton. This is

10

clearly contrary to both the letter and the spirit of the Award, flawed as it is, and requires the

Award to be modified, clarified, vacated, or remanded to the AAA.

Indeed, Stilton does not deny it can, or will, take such action to resolve the preference

action. Instead, Stilton argues that Cargill's position should be rejected as speculative:

> That Cargill claims a purely hypothetical possibility that Stilton might make use of
> its proof of claim in resolving the preference action does not render the Final
> Award non-final or non-definite. In any event, Stilton does not contend that such
> use would be anything other than "receipt" of payment for its claim under the
> Final Award, to the extent of such use. And to the extent that Stilton has a duty to
> mitigate – a proposition for which Cargill cites no authority – the Final Award
> incorporates that responsibility by requiring Stilton to repay excess monies it
> receives.

(Opp. at 26, n.13.). Here, Stilton admits it may do exactly what Cargill alleges is unfair and

contrary to the letter and spirit of the Award – that it has the power to manipulate in its favor the

amount it receives "on account of its $54 million claim in bankruptcy court in excess of $23.4

million," thus intentionally increasing its contract damages to satisfy its obligations to the estate.

If the Court does not vacate the Award, and it does not modify the Award as originally

suggested by Cargill, the Court should modify the Award by ordering that "***Stilton may not take

any action in resolving the preference claim or otherwise that could or does reduce the value

of its $54 million bankruptcy claim.***" Such a modification would prevent Stilton from

undercutting Cargill's right to credit under the Award, and would preserve Stilton's clear and

undeniable obligation to mitigate damages. *Cary Oil Co., Inc. v. MG Refining & Marketing,

Inc.*, 257 F. Supp. 2d 751, 763 (S.D.N.Y. 2003) (New York courts have traditionally adhered to

the principle that a harmed plaintiff in a breach of contract action must mitigate damages).

11

**C.**    **The Award provides Stilton with the opportunity to achieve a double recovery and the fact that legal remedies may be available to Cargill if that happens does not fix the Award.**

Cargill argues that under the Award Stilton could sell its bankruptcy claim in the distressed debt market, even to another entity controlled by Mr. McPike. The sale of Stilton's claim would freeze Cargill's right to more credit, even if the bankruptcy process later results in an ultimate distribution of 80%, 90%, or even 100%, because the Award ties Cargill's credit to the amount Stilton "receives on account of" its bankruptcy claim, not the amount Stilton is ultimately entitled to receive. This would allow Stilton a double recovery. (*See* Br. at 14.)

Stilton does not deny this is true. Instead, Stilton responds that Cargill can use the legal system to bring a claim against Stilton, suggesting that such activity would give rise to a claim for fraudulent transfer. Stilton misses the point. Under the FAA, an arbitration award must be clear and definite, and it must fix the rights and obligations of the parties *without the need for additional litigation*. *Dighello v. Busconi*, 673 F. Supp. 85, 90 (D. Conn. 1987), *aff'd*, 849 F.2d. 1467 (2d Cir. 1988). That Cargill could bring additional litigation against Stilton in the Bahamas, or elsewhere, is irrelevant. This Award, on its face, requires additional litigation to determine the rights and obligations of the parties in the first place. Indeed, any claim of fraudulent transfer would ultimately entail a fact specific determination, likely requiring a jury trial. *See Cambridge Capital, LLC v. Rossi*, 331 B.R. 47, 58–65 (Bkrtcy. E.D.N.Y. 2005) (denying motion for summary judgment on fraudulent conveyance claim). It is this prospect of litigation that makes the Award improper under the FAA and subject to modification here.

## CONCLUSION

The Court can, and should, vacate this Award. It is fatally and fundamentally flawed in that the entire basis for the award is a contract provision that does not exist.

But if the Court denies Cargill's motion to vacate, then the Court can, and should, clarify the Award to prevent the need for further litigation over the meaning of the Award, as set forth in Cargill's initial Memorandum, or by clarifying and modifying the Award as follows:  a) ordering that Cargill is not required to pay $30.6 million immediately; b) ordering that Cargill's credit may be applied in the form of a repayment from Stilton to Cargill for amounts received in excess of $23.4 million if necessary, or may also be applied as an offset against the amount Cargill must pay to Stilton taking into account additional distributions payable to Stilton as approved by the Refco bankruptcy trustee; c) ordering that the final determination of the amount of credit attributable to Cargill be determined based on the final distributions payable to Stilton at the conclusion of the Refco bankruptcy case; d) ordering that Stilton may not take any action in resolving the preference claim or otherwise that could, or in fact does, reduce value of Stilton's $54 million bankruptcy claim; and e) ordering that if Cargill pays the award in full, Stilton must transfer its bankruptcy claim to Cargill.

Dated:  August 29, 2008.

LANDIS RATH & COBB LLP

OF COUNSEL:
Michael B. Fisco, Esquire
Will Stute, Esquire
Michael M. Krauss, Esquire
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone:  (612) 766-7000
Facsimile:  (612) 766-1600

Daniel B. Rath, Esquire (#3022)
Rebecca L. Butcher, Esquire (#3816)
919 Market Street, Suite 600
Wilmington, DE  19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  rath@lrclaw.com
         butcher@lrclaw.com

*Attorneys for Respondents CIS Financial
Services, Inc. and Cargill, Incorporated*

13